USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 3 0 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

GARY TANNER,
    a/k/a "Brian Wilson," and
ANDREW DAVENPORT,

          Defendants.

- - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:

**SUPERSEDING INDICTMENT**

S1 17 Cr. 61 (LAP)

COUNT ONE
(Honest Services Wire Fraud Conspiracy)

The Grand Jury charges:

Relevant Entities and Individuals

1.    Valeant Pharmaceuticals International, Inc.
("Valeant") is a pharmaceutical manufacturer headquartered in
Canada, with its principal place of business in New Jersey. At
all times relevant to this Indictment, Valeant generated
billions of dollars in revenue per year from a wide array of
pharmaceutical products.

2.    Philidor Rx Services LLC ("Philidor") was a
specialty mail-order pharmacy that was formed in or about
January 2013 with the assistance of Valeant, including Valeant's
provision of financing, personnel, and business opportunities.
Philidor terminated operations in or about January 2016. During

the course of Philidor's existence, at least 90 percent of the drugs dispensed by Philidor were Valeant-branded drugs.

3.   In or about December 2014, Valeant purchased an option to acquire Philidor (the "Option Agreement") for an amount exceeding $100 million in cash, and approaching $300 million in total value when including forgiveness of amounts owed by Philidor to Valeant and other expenses.  The purchase option transaction resulted in payment of over $40 million in cash to ANDREW DAVENPORT, the defendant, in or about December 2014 and January 2015, with the prospect of tens of millions of dollars in further payouts in the future as Philidor met certain "milestones" outlined in the Option Agreement.

4.   GARY TANNER, a/k/a "Brian Wilson," the defendant, was hired by Valeant in or about December 2012 in connection with Valeant's acquisition of a pharmaceutical company at which TANNER was employed.  TANNER ceased being employed by Valeant in or about September 2015, when he became an employee of Philidor. During TANNER's employment by Valeant, TANNER occupied a managerial position of trust at the company.  In particular, TANNER supervised programs that were responsible for generating hundreds of millions of dollars in sales for Valeant; he reported to and had access to Valeant's top executives, including the company's Chief Executive Officer ("CEO"), on various issues; and he interacted directly with Valeant's

2

customers, suppliers, and auditors as an executive of Valeant.
Among the Valeant programs over which TANNER assumed primary
responsibility was a program called "Alternative Fulfillment"
("AF"), which was an attempt to redirect prescriptions for
certain Valeant drugs to specialty pharmacies that would assist
patients and doctors in obtaining insurance coverage for the
drugs or would provide other incentives for patients to purchase
Valeant-branded drugs instead of generic substitutes.  As a
result of, among other things, TANNER's efforts, Philidor became
the most significant specialty pharmacy in Valeant's AF program.

     5.    ANDREW DAVENPORT, the defendant, created Philidor
with the assistance of GARY TANNER, a/k/a "Brian Wilson," the
defendant; Valeant; and others.  DAVENPORT served as Philidor's
CEO throughout the period of its existence.  DAVENPORT also
owned over 40 percent of Philidor through a trust and a
corporate entity that he controlled.  As described more fully
below, from in or around the Summer of 2013 through in or around
September 2015, unbeknownst to Valeant and in exchange for the
promise of financial gain, TANNER took actions to benefit
DAVENPORT's and Philidor's interests, even when those interests
were contrary to those of Valeant.

### The Concealed Kickback and Money Laundering Scheme

     6.    From in or about the Summer of 2013 through in or
about September 2015, GARY TANNER, a/k/a "Brian Wilson," and

3

ANDREW DAVENPORT, the defendants, engaged in an illegal, concealed kickback scheme that collectively yielded them tens of millions of dollars, with the prospect of millions of dollars in additional illicit gains in the future. As described more fully below, TANNER and DAVENPORT laundered the proceeds of the scheme through shell companies that they controlled.

7.    In or about the Summer of 2013, ANDREW DAVENPORT, the defendant, agreed to kick back to GARY TANNER, a/k/a "Brian Wilson," the defendant, a portion of the proceeds DAVENPORT expected to receive from an eventual sale of Philidor to Valeant in exchange for TANNER's assistance in serving Philidor's, and therefore DAVENPORT's, interests in a variety of ways, many of which were contrary to Valeant's interests. TANNER entered into this scheme, moreover, even though he was at all relevant times a Valeant executive who was not permitted, in any manner, to receive a kickback in exchange for actions taken to advance the interests of anyone in addition to or other than Valeant. In so doing, TANNER was acting in contravention of Valeant's corporate conflict of interest policy, which prohibited Valeant executives from receiving personal payments from individuals and entities with which Valeant did business without explicit written authorization.   TANNER did not seek or receive any such written authorization; to the contrary, over the course of the scheme, TANNER falsely represented through various means that he had no

4

such conflicts of interest and was aware of none, and that he had no financial interest (which included a promised kickback) in Philidor.

8.     In addition to falsely certifying that he had no conflicts of interest or financial interests in Philidor, GARY TANNER, a/k/a "Brian Wilson," the defendant, took the following steps, among others, to conceal from Valeant his illegal kickback scheme with ANDREW DAVENPORT, the defendant:

a.     TANNER utilized the alias "Brian Wilson" when working on Philidor's behalf and communicated using a Philidor email account in the same name. For example, on or about November 2013, TANNER sent an email to a Valeant executive stating that "the primary contact at [Philidor]" would be "Brian Wilson," while omitting the fact that no such person was employed by Philidor, and that, in reality, it was TANNER pretending to be Brian Wilson and using a "Brian Wilson" email account. Tanner continued to use the Brian Wilson alias to mask and conceal his involvement with Philidor.

b.     TANNER created shell corporations to accept and hide his receipt of funds from DAVENPORT. For example, in or about August 2014, TANNER's financial advisor sent an email at TANNER's direction stating that TANNER was "looking to establish a legal entity to hold his minority interest in a private company with desire to keep ownership information

5

private."   The email continued to state that there was a
"[l]iklihood of company being sold in next 24 months . . . ."
Valeant purchased the option to acquire Philidor only four
months later, with approximately $10 million of the money
Valeant spent ultimately flowing to TANNER via a kickback from
DAVENPORT through different pass-through shell companies.

           9.    While GARY TANNER, a/k/a "Brian Wilson," the
defendant, was employed as an executive of Valeant, TANNER took
the following actions that were contrary to Valeant's interests,
and failed to disclose material information to Valeant in the
following ways, at least in part because of the financial gain
he expected to receive from ANDREW DAVENPORT, the defendant:

           a.    TANNER secretly provided assistance to
DAVENPORT, such as reviewing draft communications to Valeant and
providing advice on Philidor's negotiating positions, when
DAVENPORT was negotiating the Option Agreement with Valeant.
This assistance related to material deal terms including, among
other things, hold-back and milestone payments, where Valeant's
interests were adverse to DAVENPORT's and Philidor's.

           b.    TANNER resisted efforts by Valeant's senior
leadership to enter into business relationships with specialty
pharmacies other than Philidor, which Valeant executives
intended the company to enter into to reduce risks to Valeant

                              6

arising out of its near-exclusive reliance on Philidor for the distribution of certain categories of drugs.

c.    TANNER secured payment terms for Valeant products that were favorable to Philidor, even when such terms were against Valeant's interests.  For example, in or about the Summer of 2013, TANNER participated in the negotiation of a distribution agreement between Valeant and Philidor.  This agreement governed, among other things, the prices that Philidor would pay for certain Valeant products.  During the course of this negotiation, DAVENPORT sent TANNER an email saying, "thought we discussed either moving to 4% or adding 1.5% prompt pay," referring to discounts at which Philidor would purchase products from Valeant.  DAVENPORT continued, "Whatever you can do, I will work with."  TANNER responded, in part, by stating that he would try to "get to 4%"--that is, that he would attempt to secure a larger discount for Philidor at Valeant's expense.

d.    TANNER secured credit extensions for Valeant products on behalf of Philidor, which, among other things, increased Valeant's reliance on Philidor to distribute certain categories of Valeant pharmaceuticals, ensuring Philidor would remain Valeant's dominant specialty pharmacy and thereby compounding Valeant's diversification risk.

10.    In exchange for these illicit acts and omissions by GARY TANNER, a/k/a "Brian Wilson," the defendant, ANDREW

DAVENPORT, the defendant, agreed to kick back to TANNER a portion of the sums he would obtain from Valeant in connection with the ultimate sale of Philidor (here, through the consummation of the Option Agreement). For example, of the approximately $40 million that DAVENPORT personally received in or about December 2014 and in or about January 2015 as a result of Valeant's purchase of an option to buy Philidor, DAVENPORT kicked back approximately $10 million to TANNER, which amounted to approximately 25% of DAVENPORT's profit from his ownership interest in Philidor. Valeant payments from which DAVENPORT kicked back funds to TANNER were sent by wire transfer from bank accounts located in the Southern District of New York.

11. In part because of TANNER's false representations about his lack of payment from, and financial interest in, Philidor, and his lack of conflicts of interest, Valeant agreed to pay TANNER a bonus for his work in 2014 that included approximately $5 million in restricted stock options.

12. The kickback payments that ANDREW DAVENPORT, the defendant, made to GARY TANNER, a/k/a "Brian Wilson," the defendant, in or about December 2014 and January 2015 were made in secret and were laundered through a series of shell companies and transactions, including transactions through the Southern District of New York, that were designed to conceal the illicit source, nature, ownership, and control of the funds. Among

8

other things, in anticipation of the receipt of kickbacks from
DAVENPORT, TANNER created a Delaware shell company that was not
associated with his identity in Delaware public records which
included in its name "Befrielse," which means "liberation" in
Swedish, and that served no purpose other than to receive
kickbacks and distribute them to other accounts controlled by
TANNER and a trust TANNER created to hold proceeds of the
scheme.    In addition, kickbacks flowed from DAVENPORT to TANNER
through three separate entities within a period of days before
being deposited into TANNER's personal and trust accounts.

              13.   GARY TANNER, a/k/a "Brian Wilson," and ANDREW
DAVENPORT, the defendants, continued to conspire to secretly
advance DAVENPORT's and Philidor's interests vis-à-vis Valeant
in 2015 as opportunities might arise in order to obtain tens of
millions of dollars in sales-based milestone payments provided
for by the Option Agreement.   For example, in emails between
TANNER and DAVENPORT concerning the scheme, DAVENPORT talked
about their "butch and sundance ride into the sunset," evoking
the old Western film, Butch Cassidy and the Sundance Kid.
TANNER stated that until that point he would have to "keep
playing the game," thereby informing DAVENPORT that he would
keep pretending to act solely in Valeant's interest, while in
fact advancing DAVENPORT's and TANNER's personal interests in
direct contravention of his duty of loyalty to Valeant.

                              9

14. The additional sales-based milestone payments referenced above were not received after the nature of Valeant's relationship to Philidor, and Valeant's increasing dependence on Philidor to achieve its sales and profitability goals, were disclosed to the public in or about October 2015 by websites and news organizations. Following and in connection with these revelations, several insurers and other payors terminated their contracts with Philidor, resulting in lost sales and, therefore, realization of the payor risk that senior executives at Valeant had asked GARY TANNER, a/k/a "Brian Wilson," the defendant, to avoid by diversifying away from Philidor.

## Statutory Allegations

15. From in or about the Summer of 2013 through in or about September 2015, in the Southern District of New York and elsewhere, GARY TANNER, a/k/a "Brian Wilson," and ANDREW DAVENPORT, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346.

16. It was a part and an object of the conspiracy that GARY TANNER, a/k/a "Brian Wilson," and ANDREW DAVENPORT, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and

10

artifice to defraud, and to deprive TANNER's employer, Valeant, of its intangible right to TANNER's honest services, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, DAVENPORT, while serving as the CEO and owner of Philidor, agreed to pay TANNER kickbacks in exchange for TANNER's efforts as a Valeant executive to advance DAVENPORT's and Philidor's interests, including by facilitating transactions that enabled DAVENPORT to obtain over $40 million, and potentially tens of millions of additional dollars, from Valeant.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

(Honest Services Wire Fraud)

The Grand Jury further charges:

17.   The allegations contained in paragraphs 1 through 14 of this Indictment are repeated and realleged as if fully set forth herein.

18.   From in or about the Summer of 2013 through in or about September 2015, in the Southern District of New York and elsewhere, GARY TANNER, a/k/a "Brian Wilson," and ANDREW DAVENPORT, the defendants, willfully and knowingly, having

11

devised and intending to devise a scheme and artifice to
defraud, and to deprive TANNER's employer, Valeant, of its
intangible right to TANNER's honest services, transmitted and
caused to be transmitted by means of wire communication in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds for the purpose of executing such scheme
and artifice, to wit, DAVENPORT, while serving as the CEO and
owner of Philidor, paid TANNER approximately $10 million in
kickbacks, with the prospect of additional kickback payments, in
exchange for TANNER's efforts as a Valeant executive to advance
DAVENPORT's and Philidor's interests, including by facilitating
transactions that enabled DAVENPORT to obtain over $40 million,
and potentially tens of millions of additional dollars, from
Valeant.

(Title 18, United States Code, Sections 1343, 1346 and 2.)

## COUNT THREE

(Travel Act Conspiracy)

The Grand Jury further charges:

19.    The allegations contained in paragraphs 1 through
14 of this Indictment are repeated and realleged as if fully set
forth herein.

20.    From in or about the Summer of 2013 through in or
about September 2015, in the Southern District of New York and
elsewhere, GARY TANNER, a/k/a "Brian Wilson," and ANDREW

12

DAVENPORT, the defendants, and others known and unknown,
willfully and knowingly did combine, conspire, confederate, and
agree together and with each other to commit an offense against
the United States, to wit, a violation of Title 18, United
States Code, Section 1952.

21. It was a part and an object of the conspiracy
that GARY TANNER, a/k/a "Brian Wilson," and ANDREW DAVENPORT,
the defendants, and others known and unknown, willfully and
knowingly would and did travel in interstate commerce, and use
the mail and facilities in interstate and foreign commerce, with
intent to distribute the proceeds of an unlawful activity, and
to promote, manage, establish, carry on and facilitate the
promotion, management, establishment and carrying on, of an
unlawful activity, to wit, the offering by DAVENPORT and
acceptance by TANNER of commercial bribes in violation of New
York Penal Law Sections 180.00 and 180.05, and thereafter would
and did perform and attempt to perform an act to distribute the
proceeds of said unlawful activity, and to promote, manage,
establish, carry on, and facilitate the promotion, management,
establishment, and carrying on, of said unlawful activity, in
violation of Title 18, United States Code, Sections 1952(a)(1)
and (a)(3).

13

### Overt Act

22.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.   On or about December 15, 2014, GARY TANNER, a/k/a "Brian Wilson," and ANDREW DAVENPORT, the defendants, caused $31,386,370.40 to be wire transferred from a bank account belonging to Valeant in the Southern District of New York to a bank account in Pennsylvania belonging to End Game LP, an entity associated with DAVENPORT.

(Title 18, United States Code, Section 371.)

## COUNT FOUR

(Money Laundering Conspiracy)

The Grand Jury further charges:

23.   The allegations contained in paragraphs 1 through 14 of this Indictment are repeated and realleged as if fully set forth herein.

24.   From in or about Summer of 2013 through in or about September 2015, in the Southern District of New York and elsewhere, GARY TANNER, a/k/a "Brian Wilson," and ANDREW DAVENPORT, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and

14

agree together and with each other, to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

25. It was a part and object of the conspiracy that GARY TANNER, a/k/a "Brian Wilson," and ANDREW DAVENPORT, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, wire transfers, represented the proceeds of some form of unlawful activity, willfully and knowingly would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of the honest services wire fraud and Travel Act schemes charged in Counts One through Three of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit, TANNER and DAVENPORT established shell entities, which they used to receive proceeds of the crimes charged in Counts One through Three of this Indictment, including through banks located in the Southern District of New York, and to conceal and disguise the location, the source, the ownership, and the control of these proceeds.

(Title 18, United States Code, Section 1956(h).)

15

## FORFEITURE ALLEGATIONS

26.   As a result of committing the wire fraud and
Travel Act offenses alleged in Counts One through Three of this
Indictment, GARY TANNER, a/k/a "Brian Wilson," and ANDREW
DAVENPORT, the defendants, shall forfeit to the United States,
pursuant to Title 18, United States Code, Section 981(a)(1)(C),
and Title 28, United States Code, Section 2461(c), any and all
property, real and personal, which constitutes, or is derived
from, proceeds traceable to the commission of said offenses,
including but not limited to a sum of money in United States
currency representing the amount of proceeds traceable to the
commission of the offenses charged in Count One through Three of
this Indictment, as well as the following specific property:

a.   Any and all assets on deposit in Wells Fargo
Advisors Account 2249-1994 and Command Account 8883929533, held
in the name of "Andrew J Davenport";

b.   Any and all assets on deposit in RBC Capital
Markets Account 316-75901, held in the name of Andrew Davenport;

c.   Any and all assets on deposit in UBS Account
PY 30391, held in the names of Andrew and Kristin Davenport;

d.   Any and all assets on deposit in UBS Account
PY 30390, held in the names of Andrew and Kristin Davenport;

16

e.     Any and all assets on deposit in UBS Account
PY 29590 DD, held in the name of "the 2014 Andrew J. Davenport
Irrevocable Trust";

f.     Any and all assets on deposit in UBS Account
PY 29706 DD, held in the name of "the 2014 Andrew J. Davenport
Irrevocable Trust";

g.     Any and all assets on deposit in Bank of
America Account 457028452393, held in the name of "Befrielse
Consolidated LLC";

h.     Any and all assets on deposit in Bank of
America Checking Account 000092882679, held in the name of the
"Passiskydd Trust,"

i.     Any and all assets on deposit in Bank of
America Savings Account 004377113260, held in the name of the
"Passiskydd Trust";

j.     Any and all assets on deposit in Bank of
America Checking Account 457033885890, held in the name of
"Tanner Financial Services";

k.     Any and all assets on deposit in Wells Fargo
Advisors Account 6399-3279, held in the name of the "Passiskydd
Trust";

l.     Any and all assets on deposit in Wells Fargo
Advisors Account 2239-2233, held in the name of the "Passiskydd
Trust";

17

m. Any and all assets on deposit in TD
Ameritrade Account 173-554700, held in the name of Gary Tanner;

n. The real property and appurtenances known
and described as 810 N. Chaparral Pines Drive, Payson, Arizona
85541; and

o. The real property and appurtenances known
and described as 190 Golf House Road, Haverford, Pennsylvania
19041.

27. As a result of committing the offense alleged in
Count Four of this Indictment, GARY TANNER, a/k/a "Brian
Wilson," and ANDREW DAVENPORT, the defendants, shall forfeit to
the United States, pursuant to Title 18, United States Code,
Section 982(a)(1), any and all property, real and personal,
involved in said offense, or any property traceable to such
property, including but not limited to a sum of money in United
States currency representing the amount of property involved in
Count Four, as well as the properties listed in paragraphs 23(a)
through paragraph 23(o) of this Indictment as set forth above.

## Substitute Asset Provision

28. If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due
diligence;

18

b. has been transferred or sold to, or

deposited with, a third party;

c. has been placed beyond the jurisdiction of

the court;

d. has been substantially diminished in value;

or

e. has been commingled with other property

which cannot be subdivided without difficulty; it is the intent

of the United States, pursuant to Title 21, United States Code,

Section 853(p), and Title 28, United States Code, Section

2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Sections 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

JOON H. KIM
Acting United States Attorney
Southern District of New York

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

GARY TANNER,
a/k/a "Brian Wilson,"
and
ANDREW DAVENPORT,

Defendants.

## INDICTMENT

S1 17 Cr. 61 (LAP)

(18 U.S.C. §§ 1343, 1349, 1952, 1956,
and 2.)

JOON H. KIM
Acting United States Attorney.

A TRUE BILL

Foreperson.

8·30-17 Filed Indictment
MQ

K. N. Fox.
U.S.M.J