UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
    UNITED STATES OF AMERICA

                - v. -

    GARY TANNER,
        a/k/a "Brian Wilson," and
    ANDREW DAVENPORT,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

S1 17 Cr. 61 (LAP)

## GOVERNMENT'S MOTIONS *IN LIMINE*

                                    GEOFFREY S. BERMAN
                                    United States Attorney for the
                                    Southern District of New York
                                    One St. Andrew's Plaza
                                    New York, New York 10007

Robert W. Allen
Richard Cooper
Amanda Kramer
Assistant United States Attorneys
      -Of Counsel-

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................... 1

I. EVIDENCE AND ARGUMENTS CONCERNING IRRELEVANT
   VALEANT CONDUCT SHOULD BE PRECLUDED ............................................... 2

   A.   Relevant Facts................................................................................................... 2

   B.   Applicable Law................................................................................................. 3

   C.   Discussion......................................................................................................... 4

II. THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF WITNESSES ON
    MATTERS THAT ARE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE ..................... 5

   A.   Relevant Facts................................................................................................... 5

   B.   Applicable Law................................................................................................. 6

   C.   Discussion......................................................................................................... 7

III. THE GOVERNMENT'S PROFFERED TAX EVIDENCE IS ADMISSIBLE AS DIRECT
     EVIDENCE OR, IN THE ALTERNATIVE, UNDER RULE 404(b) ........................................ 7

   A.   Relevant Facts................................................................................................... 7

   B.   Applicable Law................................................................................................. 9

   C.   Discussion....................................................................................................... 11

CONCLUSION............................................................................................................................ 14

## Table of Authorities

*Huddleston* v. *United States,* 485 U.S. 681 (1988) .............................................................................. 12

*United States* v. *Carboni*, 204 F.3d 39 (2d Cir. 2000) ........................................................................ 10

*United States* v. *Concepcion*, 983 F.2d 369 (2d Cir. 1992) ........................................................ 10, 11

*United States* v. *Deutsch*, 451 F.2d 98 (2d Cir. 1975) ........................................................................ 15

*United States* v. *Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ................................................................... 10

*United States* v. *Guang*, 511 F.3d 110 (2d. Cir. 2007) ....................................................................... 11

*United States* v. *Inserra*, 34 F.3d 83 (2d Cir. 1994) ........................................................................... 10

*United States* v. *Mirilishvili*, 2016 WL 751690 (S.D.N.Y. Feb. 19, 2016) .................................. 15, 16

*United States* v. *Mitchell*, 328 F.3d 77 (2d Cir. 2003) ....................................................................... 12

*United States* v. *Ortiz*, 857 F.2d 900 (2d Cir. 1988) .......................................................................... 12

*United States* v. *Osarenkhoe*, 439 F. App'x 66 (2d Cir. 2011) ........................................................... 15

*United States* v. *Papadakis*, 510 F.2d 287 (2d Cir. 1975) ................................................................. 11

*United States* v. *Paulino*, 445 F.3d 211(2d Cir. 2006) ...................................................................... 11

*United States* v. *Peters*, 791 F.2d 1270 (7th Cir. 1986) ..................................................................... 17

*United States* v. *Pipola*, 83 F.3d 556 (2d Cir. 1996) ......................................................................... 16

*United States* v. *Pitre*, 960 F.2d 1112 (2d Cir. 1992) ................................................................... 12, 16

*United States* v. *Quinones*, 511 F.3d 289 (2d Cir. 2007) ................................................................... 10

*United States* v. *Ramirez*, 894 F.2d 565 (2d Cir. 1990) ..................................................................... 13

*United States* v. *Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) .......................................................... 13

*United States v. Rosa,* 11 F.3d 334 (2d Cir. 1993) ............................................................................. 16

*United States* v. *Smith*, 727 F.2d 214 (2d Cir. 1984) .............................................................................. 14

*United States* v. *Teague,* 93 F.3d 81 (2d Cir. 1996) ............................................................................. 12

*United States* v. *Valenti*, 60 F.3d 941 (2d Cir. 1995) ........................................................................... 15

*United States* v. *Williams*, 205 F.3d 23 (2d Cir. 2000) ........................................................................ 13

*United States* v. *Zackson*, 12 F.3d 1178 (2d Cir. 1993) ....................................................................... 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : S1 17 Cr. 61 (LAP) |
| - v. - | : |
| | : |
| GARY TANNER, | : |
|     a/k/a "Brian Wilson," and | : |
| ANDREW DAVENPORT, | : |
| | : |
|                   Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## PRELIMINARY STATEMENT

Gary Tanner ("Tanner") and Andrew Davenport ("Davenport") (collectively, the "defendants") are charged in a four-count superseding indictment (the "Indictment") alleging that, from in or about the summer of 2013 through in or about September 2015, they participated in a bribery and kickback scheme pursuant to which Tanner, while an employee of Valeant Pharmaceuticals International, Inc. ("Valeant"), secretly acted for the benefit of Davenport and Philidor Rx Services ("Philidor") in exchange for a bribe and kickback of approximately $10 million.  The defendants are scheduled to stand trial beginning on April 30, 2018.

In advance of trial, the Government respectfully moves *in limine* to (a) preclude the defendants from introducing irrelevant evidence relating to Valeant; (b) preclude cross-examination of witnesses on matters that are protected by attorney-client privilege; and (c) admit certain evidence relating to taxes.

1

## I. EVIDENCE AND ARGUMENTS CONCERNING IRRELEVANT VALEANT CONDUCT SHOULD BE PRECLUDED

The Government seeks an order precluding the defendants from introducing evidence of, or making arguments about, irrelevant and inflammatory events concerning Valeant that occurred principally after the crimes charged in the Indictment. Specifically, the defendants should be precluded from raising (1) internal, civil, criminal, and congressional investigations and civil litigation concerning Valeant's business dealings with Philidor, drug pricing, and other matters ("Investigations and Litigation"); (2) Valeant's March 21, 2016 8-K filing with the Securities and Exchange Commission and related communications with investors (the "Restatement"); and (3) news reports and statements by Valeant concerning its relationship with Philidor, beginning in or about October 2015, and Valeant's subsequent stock price decline ("Market Reaction"). These *post hoc* events are (1) not relevant to the facts, claims, and defenses presented in this matter, *see* Fed. R. Evid. 402; and (2) would serve solely to confuse and distract the jury from the admissible and relevant evidence presented in this case, *see* Fed. R. Evid. 403.

### A. Relevant Facts

As set forth in the Indictment, the defendants' fraudulent scheme took place from in or about the summer of 2013 through in or about September 2015, when Tanner's employment at Valeant came to an end and he became a Philidor employee. In or about October 2015, news outlets reported on Valeant's relationship with Philidor, and Valeant made statements indicating that it had purchased an option to buy Philidor in late 2014 and had since been consolidating Philidor's financials into its own. On or about October 29, 2015, three major pharmacy benefit

managers terminated Philidor from their networks.  On or about October 30, 2015, Valeant announced that it would stop working with Philidor and that Philidor would shut down.[1]

Following these announcements, several events took place.  Investigations were commenced by an Ad Hoc Committee of the Board of Directors of Valeant and various government agencies.  In or about April 2016, former Valeant executives Michael Pearson and Howard Schiller gave testimony before a Senate committee concerning drug prices[2] and were each asked about Valeant's relationship with Philidor.  The Government does not intend to call Messrs. Pearson or Schiller at trial.

In the months following October 2015, Valeant's stock price fell from approximately $156 per share to approximately $27 per share as of mid-March 2016.  The Government does not intend to offer evidence of Valeant's share price decline, nor argue that the stock price decline was caused by the defendants' crimes.

### B.   Applicable Law

As an initial matter, evidence must be relevant to be admissible. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").  "Relevant" evidence is that evidence which has "any tendency to make the existence of any fact that is of consequence to the

---

[1] The Government intends to introduce limited evidence of the decisions by insurance companies and Valeant to terminate their relationships with Philidor in or about October 2015, both to provide the jury with a timeline and necessary explanation as to why all of the anticipated milestone payments were not made, as well as to demonstrate the impact of Tanner's failure to diversify the alternative fulfillment channel as directed.  The Government has already raised with defense counsel the possibility of reaching an agreement on the scope of the evidence offered for the time period beginning October 29, 2015, but the parties have been unable to come to an agreement.

[2] Valeant's drug pricing practices are entirely irrelevant to the issues on trial.  If the defendants intend to offer evidence, or make arguments concerning this irrelevant matter, the Government will object.

3

determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Finding that evidence is relevant, however, does not end the inquiry.  Federal Rule of Evidence 403 grants a district court discretion to exclude relevant evidence on the grounds of prejudice, confusion, or waste of time. The rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

### C. Discussion

The Court should preclude any evidence of, or arguments concerning the Investigations and Litigation, the Restatement, or Market Reaction because those events are irrelevant and will present a significant risk of prejudice, create confusion, waste time, and mislead the jury. Whatever separate investigations may have taken place, the issue on trial is the defendants' intent and conduct.  Any attempt to cast aspersions of negligence on the victim of a charged fraud scheme is at odds with the longstanding principle in this Circuit that such information is irrelevant.  *See, e.g., United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (collecting and endorsing cases holding that victim's negligence in failing to discover crime perpetrated against it is no defense).  *See also United States v. Berman*, 21 F.3d 753, 757 (7th Cir. 1994) (Posner, J.) ("[E]ven if the [victim] was negligent, it would be entitled to restitution from a deliberate wrongdoer; contributory negligence is not a defense to fraud.").  Such concerns are especially pronounced where the evidence or argument attacking a victim does not pertain to the charged offenses but instead focuses on other conduct (here, for example, inquiries about Valeant keeping its relationship with Philidor confidential or attacks on Valeant's drug pricing models).

4

Even if such evidence had limited probative value, which it does not, it would be substantially outweighed by the danger of misleading the jury in myriad ways.  For example, the jury may be led to believe that the investigation of potential wrongdoing amounts to actual wrongdoing by Valeant, which undermines the defendants' guilt.  This is patently incorrect.  It would substantially prejudice the Government to suggest otherwise; would create confusion; and would mislead the jury.  Moreover, it would be a waste of time, as the Government would have to rebut such evidence with a mini-trial on what transpired in the Investigations and Litigation, Restatement, and Market Reaction.  *See In re 650 Fifth Avenue*, 2017 WL 2214869, at *19 (S.D.N.Y. May 18, 2017) (precluding evidence of related criminal investigations that did not result in charges pursuant to Fed. R. Evid. 401 and 403).  Given the lack of probative value and the significant risk of substantial prejudice, the Government respectfully submits that the Court should reject any attempt by the defendants to sully the victim and distract or inflame the jury.

## II. THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF WITNESSES ON MATTERS THAT ARE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE

### A. Relevant Facts

The Government expects to call a number of witnesses at trial who were privy, during their time working at Valeant, to communications over which Valeant has asserted an attorney-client privilege.  Such witnesses include Valeant's chief compliance officer and former general counsel, as well as various members of Valeant's business units.  While these witnesses are prepared to testify about a host of matters that do not implicate the privilege, they were also involved in communications that are protected by Valeant's attorney-client privilege.  Such communications relate to, among other things: (a) deliberations involving attorneys in or about November 2014 regarding how Tanner was permitted to interact with Philidor; and (b) certain

5

aspects of due diligence, conducted by or at the direction of attorneys representing Valeant, that were conducted prior to finalizing the purchase option transaction with Philidor in December 2014.  Valeant's counsel has advised that Valeant does not intend to waive its attorney-client privilege, and the Government does not intend to elicit testimony regarding any communications that are protected by the privilege.

### B.     Applicable Law

Federal Rule of Evidence 501 states that, unless otherwise provided, "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege."  Fed. R. Evid. 501.  "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  "The Supreme Court has instructed that, where the attorney-client privilege applies, its protections must be reliably enforced in order to effectuate its goal of promoting compliance with the law.  *In re Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005) (citing *Swidler & Berlin v. United States*, 524 U.S. 399, 399 (1998)).

Government witnesses have a right to assert privilege on cross-examination.  *See United States v. Coven*, 662 F.2d 162, 170 (2d Cir. 1981) ("It is clear that government witnesses have a right to assert the attorney-client privilege on cross-examination."); *see also United States v. Lin*, 225 F.3d 647, at *2 (2d Cir. 2000) (summary order) ("The Confrontation Clause does not deprive the trial judge of all discretion to set limits on cross-examination . . . . It is within the court's discretion to limit cross-examination to the extent that it would violate the witness's attorney-client privilege.").  To be sure, "if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the

defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part." *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963). However, "[w]here the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him." *Id.*; *see also Coven*, 662 F.2d at 171.

### C. Discussion

As noted above, Valeant has advised the Government that it has not waived its attorney-client privilege relating to the topics set forth above, and the Government does not intend to elicit testimony from Valeant witnesses that calls for disclosure of privileged information. Defense counsel will have full opportunity to cross-examine these witnesses regarding all relevant topics in a manner that comports with the Federal Rules of Evidence. As the Government does not intend to inquire on direct examination regarding privileged communications, there can be no danger of prejudice if the defendants are precluded from questioning witnesses regarding such communications. *See Cardillo*, 316 F.2d at 611.[3]

### III. THE GOVERNMENT'S PROFFERED TAX EVIDENCE IS ADMISSIBLE AS DIRECT EVIDENCE OR, IN THE ALTERNATIVE, UNDER RULE 404(b)

### A. Relevant Facts

The Government intends to introduce two pieces of tax-related evidence at trial: (1) Tanner's 2014 tax returns; and (2) evidence regarding Davenport's failure, and the failure of his entities, to issue Schedule K-1s regarding the receipt of certain funds. Tanner's 2014 tax returns

---

[3] Moreover, counsel for Valeant has advised the Government that the payment from Davenport to Tanner, which forms the core of the charged conduct, was neither disclosed to nor approved by Valeant. Therefore, defense counsel should not be permitted to inquire into otherwise privileged communications on the purported basis that such communications would provide a defense to the charges.

7

show that he received $7,472,745 of income from an entity called Befrielse Consolidated LLC ("Befrielse"). The Government expects that the evidence at trial will establish that this income was part of the kickback paid by Davenport to Tanner. In preparing to file his tax return, Tanner described this income as reflective of his payout on a percentage of a company he had received many months earlier, which company had recently been acquired. In filing his tax return, Tanner classified this income as a long-term capital gain from a partnership (although he later amended his return to change the categorization of the income to ordinary income after he learned of the investigation in this case and represented by counsel).

The second category of evidence will be offered to show that, for the 2014 tax year, neither Philidor, Andrew Davenport, nor any Philidor affiliate (including End Game LP and End Game LLC), issued a Schedule K-1 to Gary Tanner or Befrielse in connection with Befrielse's receipt of funds in December 2014 from End Game LLC.

The Government intends to introduce this evidence (collectively, the "Tax Evidence") at trial for various reasons, including, most importantly, to establish that Tanner understood that he had an undocumented, secret interest in Philidor equivalent to an ownership interest (hence why he initially classified the bribe/kickback as a long term capital gain) and also to establish that the defendants understood this ownership interest to be prohibited (hence why Davenport failed to file tax paperwork formally disclosing the same). For the reasons below, this evidence is admissible as direct evidence of the charged conduct, or, in the alternative, pursuant to Rule 404(b).

### B. Applicable Law

#### 1. Other Act Evidence

It is well settled that "other act" evidence may be admitted without reference to Federal Rule of Evidence 404(b) if it constitutes direct proof of charged criminal conduct, if it is inextricably linked with the charged conduct, or if it is necessary to complete the story of the crimes on trial. *See United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("'Evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997))); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense."). In such circumstances, evidence of other wrongdoing or of other criminal acts is appropriately treated as "part of the very act charged." *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

#### 2. Rule 404(b)

Rule 404(b) prohibits admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," but expressly allows such evidence to be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence is also admissible to show a "pattern of conduct . . . of which the crime charged [was] a part." *United States v. Papadakis*, 510 F.2d 287, 295 (2d Cir. 1975). Thus,

9

"other acts" evidence is admissible under Rule 404(b) so long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudice. *See, e.g., United States v. Guang*, 511 F.3d 110, 121 (2d. Cir. 2007) (citations omitted).

The Second Circuit takes an "inclusionary" approach to the admission of other act evidence. *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) ("Mindful of these principles, this court has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity.'") (quoting *United States v. Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992)); *see also United States v. Teague,* 93 F.3d 81, 84 (2d Cir. 1996) (proof of state of mind is a "proper purpose" for admission of other crimes evidence under Rule 404(b) (quoting *Huddleston v. United States,* 485 U.S. 681, 691 (1988))); *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than [the defendant's] criminal propensity.").

The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b). *See United States v. Mitchell*, 328 F.3d 77, 82 (2d Cir. 2003) (decision reviewed only for abuse of discretion). If requested, the Court should provide limiting instructions to the jury regarding the proper uses of the evidence. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990).

### 3. Rule 403

Whatever the basis under which it is offered, other acts evidence, like all other evidence, is admissible only if its probative value is not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Rule 403, however, generally does not preclude evidence of

10

prior criminal conduct when that prior conduct is not "any more sensational or disturbing" than the charged crime. *Pitre*, 960 F.2d at 1120 (citation omitted); *see also United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (finding no error in district court's admission of uncharged criminal conduct when the evidence "did not involve conduct more serious than the charged crime"); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (Rule 403 did not preclude evidence of prior narcotics transactions that "did not involve conduct any more sensational or disturbing" than the charged crime); *United States v. Smith*, 727 F.2d 214, 220 (2d Cir. 1984) (essential inquiry under Rule 403 for admission of other crimes evidence is whether it involves "conduct likely to arouse irrational passions").

### C.   Discussion

The Tax Evidence should be admissible as direct evidence of the charged offenses, or, in the alternative, pursuant to Rule 404(b). This evidence is intertwined with the charged offenses, as it relates to the defendants' treatment of money obtained as a result of the charged kickback scheme and it is relevant to the defendants' intent and consciousness of guilt.

#### 1.   The Tax Evidence Is Admissible as Direct Evidence of the Charged Conduct

The Tax Evidence is admissible as direct evidence of the charged conduct for several reasons. The fact that Tanner initially categorized the bribe/kickback income he received as a long term capital gain for purposes of his 2014 tax return is plainly relevant to establish Tanner's own belief that he had a secret illicit ownership interest in Philidor. This proves that Tanner lied when he certified to Valeant and told other Valeant executives that he in fact did not have any interest in Philidor, which, as discussed above, is the central deception in the charged honest services fraud.

Similarly, the fact that Davenport failed to issue Schedule K-1s, which would normally be required to report partnership income, goes to Davenport's intent and consciousness of guilt. Davenport failed to file these Schedules because he wanted to hide the bribe/kickback that he had paid to Tanner, which is direct evidence of the charged conduct.

### 2. The Tax Evidence Is Admissible Under Rule 404(b)

In the alternative, the Tax Evidence should be admitted pursuant to Rule 404(b). Tanner's 2014 tax return and Davenport's failure to submit Schedule K-1's are both offered for specific purposes—that is, to show intent and consciousness of guilt. Courts in this Circuit have routinely held tax returns admissible under these circumstances. *See, e.g.*, *United States v. Osarenkhoe*, 439 F. App'x 66, 68 (2d Cir. 2011) (holding that "there was no question that the [defendant's] tax return was admissible under Rule 404(b) . . . to provide a basis from which the jury could infer the defendant's fraudulent intent and the absence of mistake in her improper receipt of . . . payments"); *United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995) ("The tax returns were obviously probative to refute [the] defense that the contested funds were legitimate compensation for work [the defendant] performed."); *United States v. Deutsch*, 451 F.2d 98, 116 (2d Cir. 1975) (evidence of failure to report transaction was "independently probative of [defendant's] guilt because "it showed evasive conduct aimed at concealing the transaction and constitute circumstantial evidence of guilty consciousness"); *United States v. Mirilishvili*, 2016 WL 751690, at *7 (S.D.N.Y. Feb. 19, 2016) (holding tax returns admissible; "the fact that the defendant under-reported the cash income earned from [the scheme]" was "probative of the defendant's knowing participation in unlawful activity")

### 3. Rule 403 Does Not Bar the Admission of the Evidence

Where, as here, evidence is offered for a proper purpose, the Court may exclude the evidence only if the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice. *Zackson*, 12 F.3d at 1182. The Second Circuit has repeatedly held that evidence admissible under Rule 404(b) is not unduly prejudicial to a defendant so long as the court gives a limiting instruction to the jury explaining the proper purpose for the evidence. *See United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996); *Rosa*, 11 F.3d at 334.

There is no basis to exclude any of the Tax Evidence pursuant to Rule 403. As noted above, the proffered evidence is no more sensational (and is, indeed, less sensational) than the direct evidence concerning the multi-million dollar kickback Davenport paid to Tanner. *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (affirming admission of evidence that "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'") (quoting *Roldan-Zapata*, 916 F.2d at 804); *United States v. Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence). Further, the evidence here does not relate to the non-payment of taxes, but rather the classification of income, and so is not prejudicial at all.

13

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that these motions *in limine* should be granted.

Dated: New York, New York
March 12, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By: */s/*
Robert W. Allen
Richard Cooper
Amanda Kramer
Assistant United States Attorneys
(212) 637-2216/1027/2478

14