WILMERHALE

April 5, 2018

**Howard M. Shapiro**

+1 202 663 6606 (t)
+1 202 663 6363 (f)
howard.shapiro@wilmerhale.com

**BY ECF**

The Honorable Loretta A. Preska
United States District Judge
United States District Court for the
  Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    *United States v. Tanner*, No. 17-cr-61 (LAP)

Dear Judge Preska:

Prior to the deadline for filing motions *in limine*, the government sought approval to introduce Gary Tanner's original 2014 tax return.  *See* Dkt. 89 (hereafter Mot.).  The government argued that the return is "direct proof of charged criminal conduct," whether because it is "inextricably linked with the charged conduct" or necessary to "complete the story of the crimes on trial."  *Id.* at 8.  Defendants did not oppose the government's request.

Last Monday—three weeks *after* the deadline to file motions *in limine*—the government submitted a letter motion requesting that the Court preclude evidence of Mr. Tanner's amended 2014 tax return.  *See* Dkt. 105 (hereafter "Ltr.").  That request should be denied, either as untimely or on the merits.  The prejudice to defendants from the government's failure to comply with this Court's motions deadline is clear:  Defendants would have responded differently to the government's initial motion to introduce tax evidence if they had known at the time that the government—despite professing that the evidence was necessary to complete the story"— actually meant to include only half of the story.  In any event, Mr. Tanner's amended tax return and his original tax return are equally relevant.  The government's position, that the "complete story" of the alleged fraud includes only its favored evidence, is fundamentally unfair.

## BACKGROUND

In October 2015, Mr. Tanner filed his 2014 tax return, reporting approximately $7.47 million in long-term capital gains.  Working with his accountant, Steven Bandler, Mr. Tanner reported the payment as a long-term capital gain because he expected at the time that he would receive a Schedule K-1 that supported that treatment.  As the government notes, "in preparing to file his tax return, Tanner described this income [to Bandler] as reflective of his payout on a percentage of a company he had received."  Mot. 8.

WILMERHALE

April 5, 2018
Page 2

After Mr. Tanner failed to receive a Schedule K-1 by August of 2016, he consulted with a second accountant to determine whether he should amend his 2014 tax return in light of the fact that his ownership interest had not been formalized.  This meeting occurred before Mr. Tanner engaged Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") and before Mr. Tanner understood he was the target of a criminal investigation.  (The only attorney involved was Mr. Tanner's civil counsel (who had been retained in connection with a subpoena Mr. Tanner received in a securities class action brought against Valeant in Canada); she arranged the meeting with the second accountant because of Mr. Tanner's uncertainty about the appropriate filing classification.  Although that accountant did not opine that an amended return was required, Mr. Tanner opted to amend the return given that he never received the Schedule K-1 that was the basis for his original reporting.  He thus revised his description of the payment to ordinary income, working with a WilmerHale tax attorney, to submit the amended return.

## DISCUSSION

The government's motion *in limine* seeks to introduce Mr. Tanner's original 2014 tax return (either as direct evidence or under Rule 404(b)) because it is supposedly relevant to Mr. Tanner's intent to conceal his "secret illicit ownership interest in Philidor."  Mot. 11.  At the same time, the government argues in its letter motion that Mr. Tanner's amendment to the original return is irrelevant to Mr. Tanner's intent or otherwise inadmissible under Rule 403.  The government's stated reasons for excluding Mr. Tanner's amended tax return—that it was submitted long after the instant fraud and at the direction of his criminal attorneys—are easily refuted and, in any event, would not render Mr. Tanner's amended 2014 tax return irrelevant.  If, as the government insists, Mr. Tanner's original 2014 tax return is relevant to his state of mind during the time of the alleged fraud, so too is the amended tax return to complete the story.

Mr. Tanner's 2014 amended return is probative of his state of mind during the alleged fraudulent scheme.  When Mr. Tanner declared the $7,472,745 as a long-term capital gain, he was operating under the assumption that he would receive a Schedule K-1.  When that assumption proved mistaken, Mr. Tanner consulted with a second accountant and subsequently filed an amended return reporting the payment as ordinary income.  Mr. Tanner's mistaken assumption, together with his corrective measure, undermine the notion that Mr. Tanner believed he had "a secret, illicit ownership interest in Philidor."  Mot. 11.  The evidence of the amended return is not merely relevant to Mr. Tanner's state of mind, moreover.  It is integral to any faithful and "complete" story of the alleged scheme.

The government argues that the amended return is irrelevant for two reasons:  it was filed "after the completion of the instant fraud," and criminal counsel played "a significant, if not exclusive, role" in its filing.  Ltr. 2.  Each argument lacks merit.

WILMERHALE

April 5, 2018
Page 3

As to the first argument, the Second Circuit has long held that a defendant's subsequent acts may be relevant to his earlier alleged criminal intent. For example, in *United States v. Kelley*, 551 F.3d 171 (2d Cir. 2009) (per curiam), the court held that fraudulent account statements sent by the defendant after charged securities violations were relevant to his intent at the time the alleged violations took place, *id.* at 175-176. More generally, the court of appeals has recognized that "relevancy cannot be reduced to mere chronology." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990). And consistent with these cases, precedent in this district deems it "well established that proof of subsequent conduct may be admissible as shedding light on a defendant's state of mind at an earlier time, including on the issue of whether the defendant acted with criminal intent." *United States v. Valle*, 301 F.R.D. 53, 89 (S.D.N.Y. 2014), *aff'd in relevant part*, 807 F.3d 508 (2d Cir. 2015). In fact, the government's motion *in limine* pointed out that the Second Circuit "takes an 'inclusionary' approach" to such evidence. Mot. 10. While that inclusionary approach has limits, in that actions that long post-date an alleged fraud can be irrelevant, Mr. Tanner filed his amended return just over a year after the alleged fraud ended—well short of the two-to-four-year timeframe that the Second Circuit has found subsequent acts relevant to a defendant's state of mind, *see Kelley*, 551 F.3d at 175.

The government's argument for exclusion based on the timing of the amended return is particularly dubious given that the original tax return the government has sought to introduce was itself filed after the alleged scheme had ended. The government cannot have it both ways. If Mr. Tanner's initial 2014 tax return sheds light on his state of mind regarding the payment he allegedly received from Mr. Davenport, so too does his amended return.[*]

For its second argument, the government asserts that because Mr. Tanner did not act entirely independently of his counsel in filing the amended tax return, "there is simply no way to infer that the amended return has any bearing on what Tanner was thinking in 2013, 2014 and 2015 when he acted in a manner that deprived Valeant of his honest services." Ltr. 3. This statement, of course, assumes precisely what is in dispute, namely whether Mr. Tanner "acted in a manner that deprived Valeant of his honest services." The government cannot prevail by simply assuming its preferred conclusion. That aside, there is no basis for the government's claim that the involvement of counsel in the filing of an amended return categorically renders the evidence irrelevant by (somehow) conclusively disproving Mr. Tanner's explanation for the

---

[*] Nor is this an isolated instance of the government trying to have it both ways (or of trying to present only half of the story—i.e., a highly distorted picture—to the jury). The government also moved *in limine* to admit selective post-conspiracy conduct and to limit Defendants' cross-examination of certain government witnesses. *See* Dkt. 89 at 3 n.1, 5-7. As Defendants' opposition explained, that would allow the government to present a misleading version of the facts, by enabling its witnesses to provide the jury with the government's preferred story on certain key topics while prohibiting the defense from providing the full story through cross-examination. *See* Dkt. 101 at 2-4, 4-6.

WILMERHALE

April 5, 2018
Page 4

filing of the amended return.  Certainly none of the out-of-circuit cases the government cites support that claim.  They hold only that a defendant's efforts or intention to repay his fraud victims do not negate an earlier intent to defraud, a holding that is irrelevant here because the defense will not suggest that Mr. Tanner later repaid Valeant for the alleged deprivation of his honest services.  Rather, the amended tax return is relevant, as explained, to complete the story that the government intends to tell through the original tax return, i.e., to prevent the government from presenting a misleadingly incomplete picture of events.

The government's fallback request to preclude introduction of the 2014 amended return under Rule 403 fares no better.  The government asserts that the amended return would "confuse the jury" by leaving jurors "with the mistaken understanding that the amendment was filed … as a result of Tanner's belief about the origin and nature of the money, and not as a result of his attorney's suggestion."  Ltr. 3.  Here too, the government is simply assuming its preferred conclusion, i.e., that such an "understanding" on jurors' part would be "mistaken."  Whether that is so is for the jury to resolve—after seeing all the evidence and hearing each side argue for its preferred interpretation of that evidence.  The government instead asks the Court to allow the jury to hear only its side of the story.  That is impermissible.

Moreover, having insisted that "there is no basis to exclude [the original 2014 tax return] pursuant to Rule 403," Mot. 13, the government cannot credibly claim that the same rule somehow bars evidence of Mr. Tanner's amended 2014 tax return.  Neither Mr. Tanner's original 2014 tax return nor his amended return "produces an emotional response that would cause the jury to base its decision on something other than the evidence."  Mot. 13 (quoting *United States v. Pitre*, 960 F.2d 1112, 1120 (2d. Cir. 1992)).  And like the original 2014 tax return, the amended return "does not relate to the non-payment of taxes, but rather to the classification of income, and so is not prejudicial at all."  Mot. 13.  Again, the government cannot have it both ways.

## CONCLUSION

The government's request to preclude the introduction of the amended 2014 tax return should be denied.

Respectfully submitted,

/s/ Howard M. Shapiro

Howard M. Shapiro

cc:  Counsel of Record (by CM/ECF)