

Howard M. Shapiro

+1 202 663 6606 (t)
+1 202 663 6363 (f)
howard.shapiro@wilmerhale.com

June 5, 2018

**BY ECF**

The Honorable Loretta A. Preska
United States District Judge
United States District Court for the
   Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:    *United States v. Gary Tanner and Andrew Davenport*, No. 17-cr-61 (LAP)

Dear Judge Preska:

     Pursuant to Federal Rule of Criminal Procedure 33(a), I write on behalf of Defendant Gary Tanner to request a new trial in this matter or an evidentiary hearing in light of evidence of juror dishonesty discovered within the past week. Specifically, Defendants learned that Juror No. 8, Tiffany Teams, very likely lied during voir dire and deliberately concealed material information that would have resulted in her being stricken from the venire. In an apparent attempt to secure a seat on the jury, Ms. Teams did not disclose that she is currently the lead defendant in a case in this District in which it is alleged that she and other employees of a New York State-run home physically abused handicapped adults under their care and stole from their employer. *See* Amended Compl., Doc. No. 130, *D.K. v. Teams*, No. 16-CV-3246 (PAE) (attached hereto as Ex. A). Ms. Teams was scheduled to be deposed during trial in this matter; she used her jury service to avoid that deposition. At the very least, the Court should conduct an evidentiary hearing to determine whether Ms. Teams's apparent lies to the Court reflect an impermissible partiality in this case.[1]

## BACKGROUND

     On May 31, 2018, defense counsel was contacted by an attorney involved in *Teams* and, in the course of those discussions, learned that Ms. Teams, a member of the jury that convicted Messrs. Tanner and Davenport, is the lead defendant in a pending civil litigation before Judge Engelmayer. The complaint in that case alleges (at ¶ 1) "unspeakable physical and psychological abuse on severely disabled individuals." Ms. Teams, who was Juror No. 8, did not disclose this litigation in her voir dire—despite several questions from the Court to which honest answers would have included such disclosure.

---

[1] Mr. Davenport has informed us, through counsel, that he joins this motion.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    Washington

      The Union Avenue IRA is a state-run home for disabled adults. On May 2, 2016, several plaintiffs, including residents at Union Avenue, filed the litigation alleging that "[f]or years, according to the State's own investigation," the defendants, including Ms. Teams, "gave disabled residents black eyes, punched them, pulled their hair, spit in their faces, shoved them, punched them, kicked them, smashed their heads into walls, withheld food from them, showered them in cold water, falsified documents about their medical care . . . ." Ex. A ¶ 3. The amended complaint alleges specifically that Ms. Teams (a Union Avenue staff member) pulled a resident's hair and spat on her face, *id.* ¶ 141; that she used cold water to bathe residents, *id.* ¶ 144; and that she deprived residents of food as punishment, *id.* ¶ 161. The amended complaint also alleges that "[s]hortly after being placed on administrative leave, Defendants Teams and [others] gathered . . . for what they called 'Happy Hour for the Accused' and posted photographs of themselves enjoying their paid leave on social media." *Id.* ¶ 139. It further alleges numerous instances of physical abuse against severely disabled adults and includes claims of assault and battery. *Id.* ¶¶ 139-61. A separate case based on the same alleged conduct is currently pending in the New York Court of Claims.

      During voir dire here, this Court asked several questions pertaining to jurors' involvement in litigation and contacts with law enforcement. At least three of those questions required Ms. Teams to disclose the litigation:

- "[H]ave any of you, or your close friends or family members, … been the subject of an investigation or an accusation by any governmental body?" Tr. at 71.

- "[H]ave any of you, or your close friends or family members, been questioned in any matter by … any other investigative or law enforcement agency?" Tr. at 73-74. (As part of the State Justice Center's investigation, Ms. Teams was interviewed by its investigator Kelly O'Connor. *See* Doc. No. 296-1 at 7, *D.K. v. Teams*.)

- "[H]ave any of you, or your close friends or family members, been a party … or otherwise been involved in any trial or court proceeding, any investigation by a federal or state grand jury, or by a Congressional or state legislative committee, licensing authority, or governmental agency?" Tr. at 74.

      When she was added to the venire, moreover, Ms. Teams was asked directly if any of the Court's questions applied to her. She stated that she had previously served on a grand jury but did not disclose the investigation or the civil litigation brought against her. Tr. 138:19-139:7. In connection with her occupation, she stated only that "14 years I have worked with Developmentally disabled adults. New York State is my employer, direct care support." Tr. 139:13-14.

      After the court in *Teams* denied the defendants' motion to dismiss, *see* Doc. No. 236, *D.K. v. Teams*, the parties proceeded to discovery, including scheduling depositions. At the time of the voir dire, Ms. Teams was scheduled to be deposed as a defendant on May 8, 2018. *See* Doc. No. 289-3 at 2, *D.K. v. Teams*. On or around the same day that Ms. Teams was selected to serve on the jury, a lawyer coordinating on behalf of the defendants agreed to schedule her

deposition for May 15, 2018. But that lawyer subsequently informed plaintiffs' counsel that Ms. Teams could not attend the deposition because of her jury service in this case.

## APPLICABLE LAW

"The right of a defendant in a criminal prosecution to a trial 'by an impartial jury' is expressly guaranteed by the Sixth Amendment…." *United States v. Parse*, 789 F.3d 83, 110 (2d Cir. 2015) (quoting U.S. Const. amend. VI). "An impartial jury is one in which all of its members, not just most of them, are free of interest and bias." *Id.* at 111.

Voir dire plays a critical role in preserving a defendant's right to an impartial jury. The Second Circuit has held that defendants are entitled to "a full and fair opportunity to expose bias or prejudice on the part of the veniremen," and that "there must be sufficient information elicited on voir dire to permit a defendant to intelligently exercise not only his challenges for cause, but also his peremptory challenges." *United States v. Barnes*, 604 F.2d 121, 139, 142 (2d Cir. 1979) (citations and quotation marks omitted).

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." And the Supreme Court has held that a defendant may obtain a new trial by showing, first, that "a juror failed to answer honestly a material question on voir dire," and, second, that "a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). "Challenges for cause are generally based on actual bias, implied bias, or inferable bias." *United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002). "Where the juror has deliberately concealed information, bias is to be presumed." *Parse*, 789 F.3d at 111 (citation, brackets, and quotation marks omitted).

The Second Circuit has "caution[ed] district courts that, if any significant doubt as to a juror's impartiality remains in the wake of objective evidence of false *voir dire* responses, an evidentiary hearing generally should be held." *United States v. Stewart*, 433 F.3d 273, 306 (2d Cir. 2006). "Such a hearing is often the most reliable way for discerning the true motivations behind a juror's false replies." *Id.*

## DISCUSSION

Ms. Teams's almost certain lies to the Court warrant a new trial. Ms. Teams did not disclose that she was the subject of a state criminal investigation and is currently a defendant in a civil case. It can reasonably be inferred that Ms. Teams's active civil case pending in the same district did not simply slip her mind. That withheld information would have provided a valid basis to challenge Ms. Teams for cause.

First, there is no question that "a juror failed to answer honestly a material question on voir dire." *McDonough*, 464 U.S. at 556. Indeed, as shown above, Ms. Teams failed to answer *three* different questions honestly. Ms. Teams's answer about her grand-jury service, moreover, shows that she understood the Court's questions and intentionally chose not to disclose the litigation and state investigation. The seriousness of the allegations against her and the proximity to her scheduled deposition further belie any notion of an unintentional omission.

  Second, it appears that Ms. Teams lied deliberately for the specific purpose of securing a seat on the jury so that she could avoid her deposition, which was scheduled to take place during the trial and which she later said she could not attend specifically because of her jury service. *See supra* p. 2. This alone provides a basis to challenge Ms. Teams for cause. In *Parse*, the Second Circuit held that "[w]here the juror has lied for the purpose of securing a seat on the jury—a mission apparently so powerful as to cause the juror to commit a serious crime—it reflects an impermissible partiality on the juror's part." 789 F.3d at 111 (citation, brackets, and quotation marks omitted). The court added that "[w]here the juror has deliberately concealed information, bias is to be presumed." *Id.* (citation, brackets, and quotation marks omitted). Ms. Teams's deliberate lie to get on the jury evinces a presumptive bias, and her "misconduct demonstrates that she was incapable of being an impartial juror." *See Parse*, 789 F.3d at 111 (citing *United States v. Daugerdas*, 867 F.Supp.2d 445, 470 (S.D.N.Y. 2012)). As *Parse* elaborated, "[s]olely on the basis of her false voir dire testimony, the Court could easily infer that she is inherently unable to perform the crucial function of ascertaining the truth." *Id.* at 101.

  Had Ms. Teams provided honest answers, there would have been several bases to challenge Ms. Teams for cause. For example, Ms. Teams was interviewed as part of a government investigation by the Justice Center, a New York State agency that is "authorized to investigate all reports of abuse and neglect . . . and its Special Prosecutor/Inspector General shares jurisdiction with local district attorneys to prosecute criminal offense allegations." *See* https://www.justicecenter.ny.gov/about/vision. The State Justice Center's investigation substantiated at least six instances of abuse and neglect, including Ms. Teams's hair pulling and spitting. *Id.* ¶¶ 140-146. Moreover, the civil litigation brought against Ms. Teams is pending in the same court as the case in which she served as a juror. Her experience in the litigation—such as the denial of her motion to dismiss, *see* Doc. No. 236, *D.K. v. Teams*—could taint her view of this Court and the parties. While such a taint would not necessarily make her partial to the prosecution, the risk that it would is sufficient to deny Defendants their right to an impartial jury.

  The parties also would have had valid challenges for cause based on the allegations against Ms. Teams. The complaint alleges that Defendants, including Ms. Teams, physically abused the residents under their care and sought to cover up the alleged conduct for years. *See, e.g.*, Compl. ¶¶ 127-31, Doc. No. 1, *D.K. v. Teams*. Such allegations bear on Ms. Teams's veracity, her respect for the law, and her willingness to follow the Court's instructions. These allegations present a fundamentally different picture to the parties of Ms. Teams's character for truthfulness compared to the answers that she provided in voir dire.

  The complaint even alleges (at ¶ 156) that Ms. Teams "stole 'large amounts of agency food'" from her employer. That allegation would have been of particular relevance to the parties where, as here, Defendants were charged with conspiring to defraud Mr. Tanner's employer. Indeed, the Court dismissed for cause several venire members who had remote connections to this case. For example, one venire member stated that her estranged grandfather had been on trial for money laundering and organized crime. *See* Tr. 52-53. The Court dismissed her for cause. The Court also dismissed a potential juror employed by Deloitte because the government *might* introduce an exhibit involving that company. Tr. 133-37.

  There can be no doubt that truthful answers from Ms. Teams would have prompted meaningful follow-up questions. Instead, the defense was deprived (as were the government and

this Court) of the ability to meaningfully assess Ms. Teams's ability to serve as an impartial juror.

"The presence of … a tainted juror, who cannot appreciate the meaning of an oath is simply intolerable." *Parse*, 789 F.3d at 101 (citing *Daugerdas*, 867 F.Supp.2d at 475). Such a juror sat on the jury here. The defense requests a new trial based on Ms. Teams's deliberate dishonesty during voir dire.[2]

Respectfully submitted,

/s/ Howard M. Shapiro

Howard M. Shapiro

cc: Counsel of Record (by CM/ECF)

---

[2] It has also recently come to defense counsel's attention that Juror No. 10, Eric Prister, who served as the foreperson during deliberations, appears to have conducted internet research on the case prior to deliberation. According to the website LinkedIn, Mr. Prister reviewed the profile of Claire Guehenno (counsel for Mr. Tanner) on May 18, 2018, two days before the jury was charged and commenced deliberations. Because it is presumptively prejudicial for a juror, while serving, to become aware of any material extra-record information about a case, *see Remmer v. United States*, 347 U.S. 227, 229 (1954), the Court repeatedly instructed the jurors not to do "any research about the case," *see, e.g.*, Tr. 1699:11-12. As the Second Circuit has explained, "[w]here an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror." *Bibbins v. Dalsheim*, 21 F.3d 13, 17 (2d Cir. 1994) (per curiam) (internal quotation marks and citation omitted), *cert. denied*, 513 U.S. 901 (1994). Without an evidentiary hearing, it is impossible to know what or how much outside research Mr. Prister conducted, or whether any such research tainted his views. So that the Court can perform this assessment, the defense requests an evidentiary hearing.