*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 19, 2018

**BY ECF**

The Honorable Loretta A. Preska
Senior United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Gary Tanner and Andrew Davenport,**
               **S1 17 Cr. 61 (LAP)**

Dear Judge Preska:

      The Government respectfully submits this letter in opposition to the defendants' motion for a new trial or, in the alternative, an evidentiary hearing based on a juror's responses to three questions during *voir dire* (the "Def. Ltr.").

      The defendants cannot meet the high burden necessary to obtain a new trial because they cannot satisfy either prong of the applicable two-part test: (1) that the juror at issue was deliberately dishonest; and (2) that a true answer, if given, would have supported a successful challenge for cause. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). *First*, there is no evidence that the juror was intentionally dishonest in failing to bring to the Court's attention a civil lawsuit and related interview. Indeed, given the juror's candid responses to other inquiries and the imprecise nature of the questions at issue, "any omission would be more reasonably be construed as a mistake." *United States v. Sattar*, 395 F. Supp. 2d 66, 72 (S.D.N.Y. 2005). *Second*, even if the juror had mentioned the civil suit and interview, those answers would not have evinced bias or led to the conclusion that she could not act with impartiality, and would therefore not have led to a successful challenge for cause. *See United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002). This is wholly dispositive, and the defendants' motion for a new trial should be denied.

      The defendants fare no better in seeking to conduct a post-verdict evidentiary hearing. Such a hearing is unwarranted and the type of fishing expedition the Court of Appeals has long viewed with a jaundiced eye. *See, e.g., United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989); *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). Critically, a hearing would not change the outcome of the motion because a complete answer during *voir dire* would not have led to a successful motion to strike for cause. *See United States v. Stewart*, 433 F.3d 273, 304 (2d Cir. 2006) (affirming denial of hearing where district court concluded a truthful answer would not

have supported a challenge for cause); *Sattar*, 395 F. Supp. 2d at 72 (same).  Thus, the defendants' request for a hearing must also be denied.

## BACKGROUND

On Tuesday, May 22, 2018, a unanimous jury convicted defendants Gary Tanner and Andrew Davenport on all four charges in the Indictment.  On June 5, 2018, defense counsel indicated by letter that they had recently learned that Tiffany Teams, Juror #8, was a defendant in a civil case in this district brought by individuals alleging abuse of disabled adults by Teams and other employees at a state-run facility.  In that litigation, Ms. Teams' unsworn interrogatory responses indicate that she was interviewed three years ago by an investigator with an entity called the State Justice Center.  While there is no evidence that Ms. Teams knew what the State Justice Center is, its website indicates that it is an agency of New York State that serves as an advocate for people with special needs, assists in running background checks, maintains a staff exclusion list where abuse allegations have been substantiated, and also serves as a law enforcement agency with respect to certain crimes concerning people with special needs.

The defendants contend that these facts demonstrate that Ms. Teams intentionally lied when asked three *voir dire* questions posed by the Court in this case:

1. "Other than you've already told me, have any of you, or your close friends or family members, been charged with a crime or been the subject of an investigation or an accusation by any governmental body?"  (Tr. 71).

2. "Other than you've already told me, have any of you, or your close friends or family members, been questioned in any matter by the United States Department of Justice, the FBI, the District Attorney's office, the New York State or city police, or any other investigative or law enforcement agency?"  (Tr. 73-74).

3. "Other than you've already told me, have any of you, or your close friends or family members, been a party, appeared as a witness, or otherwise been involved in any trial or court proceeding, any investigation by a federal or state grand jury, or by a Congressional or state legislative committee, licensing authority, or governmental agency?"  (Tr. 74).

Each of these questions was posed to the venire before Ms. Teams was called to join it.  Once called, she was asked in open court "Did you hear the questions I asked the other jurors?"  (Tr. 138).  She replied, "Yes."  (*Id.*).  She was then asked "Do any apply to you, ma'am?"  (*Id.*).  She replied, "Just one.  Just not the time."  (Tr. 138-139).  Her last phrase was an apparent reference to the length of trial.  The Court called Ms. Teams up to the sidebar where Ms. Teams said, "I served on grand jury before federal." (Tr. 139).  The Court asked "Is there anything about your grand jury experience that would keep you from being fair and impartial here, ma'am?"  (Tr. 139.)  Ms. Teams responded, "No." (Tr. 139).  The Court then asked Ms. Teams to go through

the individual questions at sidebar, which included where she lives, her family members, where she works, her spouse's employment, the occupations of her adult children, and what she reads, watches, and does in her free time. (Tr. 139-140). On the subject of her employment, Ms. Teams said "14 years I have worked with developmentally disabled adults. New York State is my employer, direct care support." (Tr. 139). Ms. Teams was seated in the jury box and no challenges for cause were raised.

Of note, and as discussed further below, one other juror disclosed during *voir dire* that he was a litigant in another proceeding. At sidebar, the juror disclosed that he has "a pending case of a lawsuit that I have an accident in May 2017, and I don't know which day they will probably call me up." (Tr. 42). This revelation did not prompt any substantive questions about the nature of the litigation or challenges for cause from either defendant. Indeed, the defense raised no additional issues regarding the juror once it became clear that the timing of the other lawsuit would not impact his jury service. (Tr. 44). The Court ultimately sat the juror and he served throughout the trial. (Tr. 44).

Notwithstanding the fact that the lawsuit against Ms. Teams is public and is readily discoverable through internet research,[1] the defendants first raised the issue with the Government and the Court on June 5, 2018.

## DISCUSSION

The District Court is always in the best position to evaluate alleged improprieties in the jury selection process. The Court conducts *voir dire*, seeks input from the parties on follow-up questions, and considers and determines challenges for cause. In light of these realities, it is unsurprising that the Second Circuit has acknowledged that district courts have wide discretion in considering and rejecting relief related to purported juror misconduct. *See United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002) (ruling on hypothetical challenge for cause under second *McDonough* prong reviewed only for abuse of discretion); *Stewart*, 433 F.3d at 206 (whether to hold evidentiary hearing on juror misconduct reviewed only for abuse of discretion); *United States v. Vitale*, 459 F.3d 190 (2d. 2006) (same); s*ee also generally United States v. Ploof*, 464 F.2d 116, 118-19 n. 4 (2d Cir. 1972) ("There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury."). Here, the *voir dire* taken as a whole (1) does not support the inference that Ms. Teams engaged in deliberate deception, and (2) indicates that a complete answer would not have led to a successful challenge for cause. Accordingly, the Government respectfully submits that the Court should deny the defendants' motions for an evidentiary hearing and a new trial.

---

[1] An opinion in the civil lawsuit is the first result returned when one enters "Tiffany Teams" and "New York" into the Google search engine.

## I. **Applicable Law**

### A. **Accusations of Juror Misconduct**

"[T]here is a strong presumption against setting aside jury verdicts based on accusations of juror misconduct." *Sattar*, 395 F. Supp. 2d at 72 (citing *Tanner v. United States*, 483 U.S. 107, 120-21 (1987)). A party seeking a new trial based on a juror's failure to disclose information must satisfy a two-part test established by the Supreme Court: (1) that a juror failed to answer honestly a material question on *voir dire*; and (2) that the correct response would have provided a valid basis for a challenge for cause. *See United States v. Parse*, 789 F.3d 83, 110 (2d Cir. 2015) (citing *McDonough*, 464 U.S. at 554 (internal quotations omitted)). Both prongs must be met before a new trial may be obtained. *McDonough*, 464 U.S. at 556; *United States v. Shaoul*, 41 F.3d 811, 916 (2d Cir. 1994) (affirming denial of motion for new trial where juror failed to disclose familial relationship with an AUSA not involved in the case). While various reasons may motivate a juror to conceal information on *voir dire*, "only those reasons that affect a juror's impartiality can truly be said to affect the impartiality of a trial." *McDonough*, 464 U.S. at 556.

The "threshold requirement" of the *McDonough* test is deliberate juror dishonesty. *Sattar*, 395 F. Supp. 2d at 72. A juror's good faith failure to respond, though mistaken, does not satisfy even the first prong of the test. *Shaoul*, 41 F.3d at 815 (citing *McDonough*, 464 U.S. at 555).

To evaluate the second prong of the *McDonough* test, "the district court must 'determine if it would have granted the hypothetical challenge.'" *Stewart*, 433 F.3d at 304 (quoting *Greer*, 285 F.3d 158, 171). Challenges for cause are generally based on actual bias, implied bias, or inferable bias. *Greer*, 285 F.3d 158, 171 (citing *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)). Actual bias is bias in fact – the existence of a state of mind that leads to an inference that the person will not act with entire impartiality; implied bias exists when an average person in the position of the juror would be prejudiced; inferred bias may be found in a judge's discretion when a juror discloses a fact that bespeaks a risk of partiality. *Torres*, 128 F.3d at 43-47. Implied bias "deals mainly with jurors who are related to the parties or who were victims of the alleged crime themselves." *Id.* at 45. The Supreme Court has held that a post-trial allegation of jury partiality must rest on actual bias. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) (determination of actual bias purpose of post-verdict hearing on juror partiality). The Second Circuit, however, has indicated that an extreme instance of implied or inferred bias may also suffice. *See Greer*, 285 F.3d at 172 (assuming this possibility and finding no implied or inferred bias); *see also McDonough*, 464 U.S. at 556-67 (Blackmun, *J.*, concurring) (remarking that inferred bias might be sufficient in an "exceptional circumstance").

### B. **Motions for an Evidentiary Hearing**

Like a motion for a new trial, "the standard for conducting a post-verdict jury inquiry, such as an evidentiary hearing, is also demanding." *Sattar*, 395 F. Supp. 2d at 72 (denying motion for post-verdict hearing upon learning that a juror did not disclose having spent several days in military jail in response to question about whether jurors had been in prison). A trial court is required to hold a post-trial hearing only when "reasonable grounds for investigation exist." *Moon*, 718 F.2d at 1234. "Reasonable grounds are present when there is clear, strong, substantial and

incontrovertible evidence that a specific, non-speculative impropriety has occurred which could have prejudiced the trial of the defendant." *Id.* at 1234; *see also King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978) (affirming denial of post-verdict hearing even when presented with affidavit of juror indicating she read news articles about excluded evidence); *United States v. Moten*, 582 F.2d 654, 665-66 (2d Cir. 1978) (remanding for hearing with defendants present only because relevant *voir dire* had been conducted *in camera* and not in open court).

While district courts should hold an evidentiary hearing if there is "objective evidence of false *voir dire* responses" leaving "significant doubt" as to a juror's impartiality, *Stewart*, 433 F.3d at 306, the Second Circuit has historically taken a circumspect approach to post-verdict juror inquiries. *See Moon*, 718 F.2d at 1234 (cautioning that district courts should be reluctant "to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences."); *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (noting that "post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom [sic] deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts."). The Second Circuit has "consistently refused to allow defendants to investigate 'jurors merely to conduct a fishing expedition.'" *Ianniello*, 866 F.2d at 543 (quoting *Moon*, 718 F.2d at 1234).

## II. <u>Argument</u>

The defendants fail both prongs of the *McDonough* test and are not entitled to a hearing.

### A. The Defendants Fail the First Prong of the *McDonough* Test

First, there is no evidence that Ms. Teams deliberately answered any question dishonestly (or intentionally failed to disclose a truthful answer), as required by the first prong of the *McDonough* test. Any omission would be more reasonably construed as a mistake, given Ms. Teams' candid disclosure about the nature of her employment and the identity of her employer and the vague nature of the questions at issue. "To invalidate the result of [ ] a trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555-56.

Before turning to the questions at issue here, it is instructive to review the facts of *Stewart*, in which Judge Cedarbaum declined to hold a hearing or order a new trial based on alleged juror dishonesty during *voir dire*, and *Sattar*, where Judge Koeltl did the same. In *Stewart*, a juror failed to disclose several facts concerning himself and those close to him, including a civil judgment against him and his son's criminal conviction. *Stewart*, 317 F. Supp. 2d 432, 438 (S.D.N.Y. 2004) ("*Stewart I*"), *aff'd*, 433 F.3d 273 (2006). Judge Cedarbaum was guided by the Supreme Court's recognition that "jurors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." *Stewart I*, 317 F. Supp. 2d at 438 (citing *McDonough*, 464 U.S. at 555). Through that lens, the district court asked whether a reasonable juror would necessarily understand the questions posed to call for the responses the defendants insisted should have been given. *Id.* at 438, 442-43 (*e.g.*, "Would a reasonable juror necessarily consider an ex-

girlfriend to be someone close him?"); *id.* at 442 (*e.g.*, "The relevant question asks about accusations of wrongdoing on a job. . . . A volunteer position is therefore not a job.").

Judge Cedarbaum concluded that the juror's responses were not indicative of dishonesty, noting that there was "ambiguity in each of the questions that defendants highlight." *Stewart I*, 317 F. Supp. 2d at 438. Simply put, that "a juror failed to place the broadest possible construction on those questions" did not render the answers given deceptive. Accordingly, the court held that the defendant did not satisfy the first prong of the *McDonough* test. *Id.* With respect to the second prong, the district court found that even if the juror's responses had been intentionally false, the correct answers would not have supported a challenge for cause. *Id.* Thus, the court denied the motion for a post-verdict hearing and new trial. *Id.* The Second Circuit affirmed, finding that the failures to disclose in response to ambiguous questions was "not the type of showing that constitutes 'reasonable grounds' for investigation," and that in any event none of the correct answers would have supported a challenge for cause. *Stewart*, 433 F.3d at 304.

Judge Koeltl also declined to hold a hearing after considering the ambiguity in a question on *voir dire* and the understanding of the average juror. In *United States v. Sattar*, 395 F. Supp. 2d at 73, the district court construed as an unintentional mistake a juror's failure to disclose that he had been in military jail for a few nights in response to a question about having been in prison, and declined to hold a hearing. Judge Koeltl came to this conclusion based on two principal facts. First, the district court reasonably concluded that the juror had made a mistake given that he disclosed the underlying disciplinary proceeding. *Id.* Second, the court observed that there is a difference between jail (where the juror had spent several days) and prison (the subject of the question in *voir dire*), and noted that "there was no question on the juror questionnaire about jail, and certainly none about military jail." *Id.*

As set forth below, the questions posed to Ms. Teams were as ambiguous as the questions in *Stewart* and *Sattar*:

> - "Other than you've already told me, have any of you, or your close friends or family members, been charged with a crime or been the subject of an investigation or an accusation by any governmental body?"
>
> This question does not call for the disclosure of civil litigation. And to a layperson, this question would not have clearly called for disclosure of the fact that Ms. Teams was interviewed by the State Justice Center. The question focuses the listener on criminal offenses by leading off with "charged with a crime." The remainder of the question requires a juror to know what it means to be a "subject" of an investigation, and further calls for an affirmative answer only concerning investigations or accusations by a "governmental body." There is no evidence that Ms. Teams knew that she was a *subject* of an investigation conducted by the State Justice Center (as opposed to a witness), or that Ms. Teams understood that the State Justice Center falls within the definition of a "governmental body" (especially given that the overall thrust of the question is focused on criminal investigations by government bodies like the FBI or the NYPD). There is simply no evidence that Ms. Teams deliberately answered this question dishonestly. *See Stewart*, 433 F.3d at 303.

- "Other than you've already told me, have any of you, or your close friends or family members, been questioned in any matter by the United States Department of Justice, the FBI, the District Attorney's office, the New York State or city police, or any other investigative or law enforcement agency?"

  To a layperson, this question would not clearly call for Ms. Teams to disclose her interview by the State Justice Center. Again, the length and nature of the question connotes an inquiry into criminal conduct. Only after five categories of criminal law enforcement institutions (DOJ, FBI, District Attorney's Office, New York State police, and NYPD), did the question end with the catch-all "or any other investigative or law enforcement agency." It would be perfectly reasonable for a layperson not to think of the State Justice Center as keeping the same company as five of the principal criminal law enforcement bodies operating in New York City. There is no reason to believe that Ms. Teams thought of the State Justice Center as a law enforcement agency, given that her interview occurred years ago and she has not been charged with a crime. Given this ambiguity, the mere fact that Ms. Teams did not reveal that she was interviewed by the State Justice Center three years earlier falls far short of evidence that Ms. Teams answered this question dishonestly. *See Sattar*, 395 F. Supp. 2d at 75.

- "Other than you've already told me, have any of you, or your close friends or family members, been a party, appeared as a witness, or otherwise been involved in any trial or court proceeding, any investigation by a federal or state grand jury, or by a Congressional or state legislative committee, licensing authority, or governmental agency?"

  This is a difficult question for a layperson to answer, going back and forth between trials and investigations, federal and state proceedings, and criminal and legislative inquiries. It does not specifically ask if a juror had been sued or named as a defendant in a civil case. It is wholly unclear that an average juror would have understood being a "party . . . [to a] court proceeding" to call for disclosure that he or she was a defendant in an unrelated civil matter. The record of other jurors' responses to this question underscores the ambiguity of this broad question. Of the almost 40 other prospective jurors to whom this question was posed, only one responded to this question by disclosing at sidebar participation in a grand jury proceeding.[2] (Tr. 74-75). Not a single other prospective juror answered in the affirmative, despite the fact that the question had no time parameters. The fact that Ms. Teams failed to bring up the civil case in response to this imprecise question is a far cry from the evidence of a deliberate lie the defendants must show to satisfy the first prong of *McDonough*.

---

[2] As discussed above, another juror disclosed his involvement in civil litigation concerning an accident, but did so in the context of expressing concerns about scheduling. (Tr. 42).

There is also no evidence that Ms. Teams was intentionally dishonest. Indeed, like the juror in *Sattar*, Ms. Teams disclosed a number of pertinent facts inconsistent with an attempt to deceive. Ms. Teams candidly disclosed her true name, the nature of her employment, and her employer – the combination of which allow for easy discovery of the civil case. Indeed, a Google search for "New York" and "Tiffany Teams" returns as the first result a link to an opinion in the civil case. Thus, the evidence strongly suggests that she was not trying to be deceitful.

Because the defendants cannot meet the high burden of establishing that Ms. Teams intentionally withheld material information from the Court in these answers, they cannot satisfy *McDonough*. Accordingly, their motion fails.

### B. The Defendants Also Fail the Second Prong of the *McDonough* Test

Even if the defendants could demonstrate that Ms. Teams intentionally withheld information from the Court, they cannot demonstrate – as they must – that the Court would have granted a hypothetical challenge for cause had the complete answers been given. *See Greer*, 285 F.3d at 171. Truthful answers to the three *voir dire* questions at issue would have evinced no bias to support a challenge. *See id.* at 172-73 (the central question in considering bias is whether "the deliberateness of the particular lies *evidenced partiality*") (emphasis added).

The failure to disclose similar facts has been found not to support a challenge for cause in at least three other cases in this Circuit: *Stewart*, *Nix*, and *Sattar*. In *Stewart*, the district court considered a juror's failure to disclose a civil judgment against him and his wife in response to the question "have you or anyone close to you ever . . . been sued by someone?" *Stewart*, 317 F. Supp. 2d at 441-42.[3] The district court found that the information, had it been disclosed, would not have supported a challenge for cause, noting that the "defendants offer no explanation as to how the fact that a court has entered a judgment against a prospective juror supports an inference that the individual would be biased against defendants in a completely unrelated case." *Id.* The Second Circuit affirmed the district court's conclusion, noting its reluctance to disturb a trial judge's exercise of discretion. *Stewart*, 433 F.3d at 304.

In *United States v. Nix*, 275 F. Supp. 3d 420 (W.D.N.Y. 2017), the district court considered a juror's nondisclosure of a lengthy criminal record. The district court found that while some answers were inaccurate, they did not rise to the level of intentional falsehood necessary to satisfy the first prong of the *McDonough* test. *Id.* at 440-48. But the Court also went further and found that truthful answers could not have established bias under the second prong of the test. *Id.* at 448-54. Indeed, the district court noted that even after a hearing there was no evidence that the juror knew that disclosure of his criminal record could have disqualified him from jury service. *Id.* at 451. Similarly, the district court found that there was "no fact in the record which, had it been elicited during jury selection, would have required the Court to automatically assume bias on the

---

[3] The defendants rely extensively on the very serious, but unproven, allegations set forth in the civil complaint against Ms. Teams, *see* Def. Ltr. at 4. For purposes of the instant motions, these should be given no weight, as they amount to "little more than hearsay." *See Stewart*, 317 F. Supp. 2d 432, 438 (S.D.N.Y. 2004).

Case 1:17-cr-00061-LAP   Document 166   Filed 06/19/18   Page 9 of 12

Page 9

part of [the juror] or that [the juror] was prejudiced against Defendants or in favor of the Government." *Id.*

In *United States v. Sattar*, the district court found that the defendants "completely failed to satisfy the second prong of the *McDonough* test" where the juror at issue had failed to disclose that he had spent several days in jail. 395 F. Supp. 2d at 74. There, the defendants conceded that the mere fact that the defendant had been incarcerated would not have formed a valid basis for striking him for cause. *Id.*

These cases are instructive. As in *Stewart*, the belated realization that Ms. Teams was involved in unrelated civil litigation cannot support a finding of bias because that simple fact would not have given rise to a challenge for cause. And as in *Nix*, even if the suit somehow raised the specter of bias, there would be no reason to "automatically assume bias . . . *against Defendants or in favor of the Government*." *Nix*, 275 F. Supp. 3d at 451 (emphasis added). Finally, and as in *Sattar*, the defendants here essentially concede as much. (*See* Def. Ltr. at 4 (claiming that Ms. Teams's experience in civil litigation "could taint her view of this Court and the parties" but acknowledging that "such a taint *would not necessarily make her partial to the prosecution*") (emphasis added)). Straining for a foothold, the defendants note that "truthful answers from Ms. Teams would have prompted meaningful follow-up questions." (Def. Ltr. at 4). But that is not the test, as is made plain by the defendants' failure to cite any authority on this point. The test it is whether a truthful answer alone would have led the district court to strike Ms. Teams for cause. There is no evidence of that whatsoever.

The defendants cite two examples of purportedly similar jurors excused for cause in this case as evidence that the same would have befallen Ms. Teams. (*See* Def. Ltr. at 4). Those examples are inapposite.

First, defendants contend that a prospective juror was stricken for cause after she "stated that her estranged grandfather had been on trial for money laundering and organized crime." (Def. Ltr. at 4 (citing 52-53)). This is a gross mischaracterization. The prospective juror approached the sidebar and said: "I'm sorry, I am just having like a really bad like anxiety. My grandfather was involved in like money laundering and organized crime and was brought to trial. I think it was a few years ago. I mean, he is estranged from my family but we grew up knowing it. And like I just -- I don't know, like *I feel like biased*. Does that make sense? Like about money laundering and, I don't know, like kickbacks and all these weird things." (Tr. 52 (emphasis added)). As the Court attempted to ask follow-up questions, the prospective juror said "I can't even like talk right now, it is too much. . . . I just feel – I don't know. *I feel biased already*." (Tr. 52 (emphasis added)). Upon being asked whether she could "make the decision whether the government has or has not proved all the elements beyond a reasonable doubt fairly and impartially," the prospective juror said "I don't think so. I feel like I am too distracted. I am too anxious. Like in this moment, I just feel uncomfortable. I don't feel that I can focus on the information being put in front of me. I feel like, I don't know, I just -- yeah. I don't." (Tr. 53). The parties then agreed that the juror should be excused for cause. (Tr. 53). A fair reading of the record therefore indicates that this juror was stricken not because she had a relative who had been on trial, but rather because she said repeatedly that she was biased and could not be fair (and that bias, moreover, would have been *against the Government*, not the defendants).

Second, the defendants claim that "[t]he Court also dismissed a potential juror employed by Deloitte because the government might introduce an exhibit involving that company." (Def. Ltr. at 4 (citing Tr. 133-37)). This too misstates the record. When the prospective juror approached sidebar, he indicated that: (1) he was a tax partner at a firm that performed an analysis in this case; (2) he had worked quite a bit with counsel for Valeant; (3) he has a large federal practice so earns a lot of money from the federal government; and (4) and had performed analysis for a private equity client concerning a transaction involving Valeant. (Tr. 133-34). The parties conferred and agreed the juror should be dismissed for cause. (Tr. 136). As the Government explained to the Court, a Deloitte memo that analyzed the financial independence of Philidor and Valeant would likely be admitted in evidence, the jury would likely hear testimony about that analysis, and a witness from Deloitte had been noticed but likely would not be called. (Tr. 136). Thus, unlike with Ms. Teams, the prospective juror would be asked to evaluate impartially an analysis conducted by his colleagues at Deloitte and the memo documenting that analysis. These circumstances implicate actual bias and are a world apart from the unrelated civil allegations against Ms. Teams.

The defendants' reliance on *Parse*[4] is similarly misplaced. They cite *Parse* for the proposition that the mere presence of "a tainted juror, who cannot appreciate the meaning of an oath is simply intolerable." (Def. Ltr. at 5 (citing *United States v. Parse*, 789 F.3d 83, 101 (2d Cir. 2015))). But *Parse* does not go this far, and the defendants' reading of that decision would invalidate *McDonough* and its progeny. Indeed, the facts in *Parse* and the instant case could not be more different. Following trial, the district court found *actual* as well as implicit bias on the part of a juror and overturned the guilty verdicts of all but one defendant on the basis of "exceptional circumstances – deliberate lies engineered to create a fictitious, 'marketable' juror." *Id.* at 101. The district court found, with respect to one defendant, that he had waived his argument for a new trial based on his attorneys' suspicion about the juror's veracity, and whether that suspicion amounted to actual knowledge. *Id*. The *Parse* Court, however, ordered a new trial for the defendant at issue, but, in so doing, reaffirmed the two-part test established by the Supreme Court in *McDonough*. *Id.* at 110. While the two prongs of the *McDonough* test can of course bleed together if the dishonesty shows "a personal interest in this particular case that was so powerful as to cause the juror to commit a serious crime [by lying during *voir dire*]," *Nix*, 275 F. Supp. 3d 420 (quoting *United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989)), there is no evidence of such a personal interest in this case on the part of Ms. Teams.[5] Indeed, in stark contrast to the facts in *Parse,* it is highly unlikely that Ms. Teams would have had any reason to believe that disclosing her civil case would have had an effect on her jury service.

---

[4] Judge Pauley's decision in *United States v. Daugerdas*, 867 F. Supp. 2d 445 (2012), was captioned *United States v. Parse*, 789 F.3d 83 (2d Cir. 2015), on appeal.

[5] The defendants repeatedly suggest without a shred of evidence that Ms. Teams may have intentionally lied about the civil suit and the state agency interview in order to delay her deposition in the civil case. Frankly, this allegation – that Ms. Teams purposefully and repeatedly perjured herself in order to postpone a deposition – is absurd. The deposition would just be rescheduled.

Case 1:17-cr-00061-LAP   Document 166   Filed 06/19/18   Page 11 of 12

Page 11

Here, there is no reason to believe that a challenge for cause would actually have been made had Ms. Teams disclosed the existence of the civil case. There is no reason to think that the presence of a civil lawsuit would bias Ms. Teams toward either party. Indeed, as discussed above, another juror mentioned at sidebar that he was a party to a lawsuit concerning an accident, and the defendants did not propose a single substantive follow-up question about the juror's role in that case, the underlying conduct, the allegations in the case, or any related criminal investigation. (Tr. 42-44). That is because the fact of that lawsuit, as with Ms. Teams' suit and interview, is not particularly probative of anything. The defense claims now that they would have peppered Ms. Teams – unlike that other juror – with follow-up questions had she given a complete answer. But that is a self-serving assertion and all the contemporaneous evidence is to the contrary.

With Ms. Teams, as with the other juror, there is no evidence of actual, implied, or inferred bias to warrant a new trial. Nor is there "significant doubt as to [the] juror's impartiality remain[ing] in the wake of objective evidence of false *voir dire* responses" such that a hearing is required. *Stewart*, 433 F.3d at 306 (citing *Smith v. Phillips*, 455 U.S. at 215.). Because the defendants cannot meet the high burden of establishing that a complete answer to the questions at issue would have led to Ms. Teams being successfully challenged for cause, they cannot satisfy *McDonough*. Accordingly, their motion again fails.

### C. The Defendants Are Not Entitled to an Evidentiary Hearing

A hearing is not appropriate here, where there is ample evidence in the record to conclude that Ms. Teams did not intentionally conceal material information and, in any event, that the information at issue would not have led to a successful challenge for cause. The Government has identified only two cases in which the Second Circuit reversed a denial of a motion for a post-verdict hearing concerning juror misconduct in the thirty years since *McDonough*. Both are readily distinguishable because they involved the heightened concerns surrounding a failure to disclose a relationship between a juror and the U.S. Attorney's Office itself.

In *United States v. Colombo*, 869 F.2d 149 (2d Cir. 1989), the Second Circuit remanded for a hearing to determine the veracity of juror affidavits indicating that: (1) a juror intentionally failed to disclose that her brother-in-law was a lawyer for the Government because she wanted to sit on the case; and (2) the juror had told at least one other juror that she was familiar with a location mentioned at trial and knew it to be a hangout for gangsters. 869 F.2d at 150. Although the Second Circuit did not apply the two-part test established by the Supreme Court five years earlier in *McDonough*, the Court in effect found that both prongs of the *McDonough* test were satisfied because the juror admitted not only intentional concealment but "concealment of facts from which specific bias could be inferred." *Stewart*, 433 F.3d at 305 (distinguishing *Colombo*).

In *United States v. Vitale*, 459 F.3d 190 (2d Cir. 2006), the Second Circuit found that the district court abused its discretion by denying the motion for a hearing where it was disclosed post-trial that: (1) the spouses of a juror and one of the AUSAs worked at the same institution; (2) the juror's and AUSA's spouses knew each other; (3) the AUSA's spouse came to watch part of the trial and recognized the juror; (4) the AUSA and her spouse spoke that night about her spouse having come to court; and (5) the AUSA's spouse, the juror, and the juror's spouse spoke in person hours after the jury returned its verdict. In large part because there were "questions about whether

the prosecutor knew during trial that her husband recognized a juror," and to "create incentives for the government to address such matters before rather than after a verdict," the Court remanded for a hearing on the issue of possible juror bias. 459 F.3d at 199-200.

No such concerns animate the present matter.[6]  Because there can be no "*significant doubt* as to [the] juror's impartiality," *Stewart*, 433 F.3d at 306 (emphasis added), the defendants' request for a hearing should be denied.

## CONCLUSION

For the aforementioned reasons, the defendants' motion for a new trial and, in the alternative, an evidentiary hearing should be denied.

>Respectfully submitted,
>
>GEOFFREY S. BERMAN
>United States Attorney
>
>by: _____/s/_____
>Robert Allen/Richard Cooper/Amanda Kramer
>Assistant United States Attorneys
>(212) 637-2216/2478/1027

cc:     Counsel of Record (by ECF)

---

[6] The defendants, in passing and by way of a footnote, request a hearing to determine "what or how much outside research [Juror No. 10] conducted, or whether any such research tainted his views." Def. Ltr. at 5 n.2.  This request is based on research by defense counsel on the website LinkedIn, which reflected that Juror No. 10 viewed the LinkedIn profile of Claire Guehenno, a member of Tanner's defense team, during the course of the trial.  Notably, defense counsel proffers no evidence of intentional misconduct, bias, or any extraneous influence on the part of Juror No. 10, no evidence that Juror No. 10 intentionally sought out Ms. Guehenno's profile, no evidence that Juror No. 10 attempted to communicate with Ms. Guehenno, and no evidence that Juror No. 10 was influenced in any way by having viewed Ms. Guehenno's profile.  This is not "internet research on the case" as the defendants claim, (*see* Def. Ltr. at 5 n.2), and the Court never expressly instructed the jury to refrain from looking up any attorneys.  (Tr. 85).  The Court should reject the defendants' attempt to conduct an improper fishing expedition by way of an evidentiary hearing. *See Moon*, 718 F.2d at 1234.