

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

               Plaintiff,

     -against-

GARY TANNER and
ANDREW DAVENPORT,

            Defendants.

---

17 Cr. 61 (LAP)

<u>RESTITUTION ORDER</u>

LORETTA A. PRESKA, Senior United States District Judge:

On May 22, 2018, a jury convicted Gary Tanner ("Tanner") and Andrew Davenport ("Davenport") (collectively, "Defendants") of honest services wire fraud conspiracy, honest services wire fraud, Travel Act conspiracy, and money laundering conspiracy. Defendants were sentenced on October 30, 2018.  The Court deferred its determination of restitution for up to 90 days after sentencing, as permitted by 18 U.S.C. § 3664(d)(5), and gave the parties two days beyond the 90 days to inform the Court of their desired redactions to the publicly filed version of the Restitution Order.  "Such an extension beyond the ninety-day statutory period is permitted where, as here, the extension causes no actual prejudice to the defendant."  <u>United States v. Gupta</u>, 925 F. Supp. 2d 581, 584 (S.D.N.Y. 2013) (citing <u>United States v. Douglas</u>, 525 F.3d 225, 252-53 (2d Cir. 2008)), <u>aff'd</u>, 747 F.3d 111 (2d Cir. 2014).

Before the Court is the Government's request, pursuant to
the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C.
§ 3663A, that Bausch Health Companies, Inc. (f/k/a Valeant
Pharmaceuticals Inc.) (herein, "Valeant" or the "company"), be
awarded restitution in the amount of $15,466,364.46.
(Government's Restitution Letter ("Dec. 11 Govt. Ltr."), dated
Dec. 11, 2018 [dkt. no. 229], 1; Valeant's Victim Letter ("Dec.
10 Victim Ltr."), dated Dec. 10, 2018 [dkt. no. 229-1], 1.)[1]

For the reasons stated herein, the Government's request for
restitution on behalf of Valeant is granted in part and denied
in part [dkt. no. 201].   Defendants are ordered, jointly and
severally, to pay Valeant a total of $11,855,683.35 in
restitution.

I.   **BACKGROUND**

In support of the restitution sought, the Government
submitted a victim impact statement from Valeant as Exhibit A to
the Government's Sentencing Memorandum on October 23, 2018.

---

[1] The Government initially requested that Defendants make
restitution in the amount of $15,489,706.19.   (Government's
Sentencing Memorandum, dated Oct. 23, 2018 [dkt. no. 201], 14.)
Valeant later changed the requested restitution amount to the
$15,466,364.46 figure the Court considers in this Restitution
Order.   (Dec. 10 Victim Ltr. at 1.)   The Government then adopted
this revised restitution amount, (Dec. 11 Govt. Ltr. at 1), and
Defendants objected to it in Defendants' Second Restitution
Letter ("Dec. 21 Def. Ltr."), dated Dec. 21, 2018 [dkt. no.
231], 1.)

(Non-Party Bausch Health Companies Inc.'s Victim Impact
Statement in Support of its Request for Restitution ("Oct. 23
VIS"), dated Oct. 23, 2018 [dkt. no. 201-1].)  Valeant filed
three volumes of exhibits containing support for the restitution
amount sought; legal billing records submitted by Valeant were
filed under seal.

On November 20, 2018, Defendants filed their first letter
opposing the restitution sought by the Government on behalf of
Valeant.  (Defendants' First Restitution Letter ("Nov. 20 Def.
Ltr."), dated Nov. 20, 2018 [dkt. no. 220].)  Defendants filed
three exhibits with their letter, one of which was filed under
seal.  (See Exhibit C to Nov. 20 Def. Ltr., dated Nov. 20, 2018
[dkt. no. 220-3].)

On December 11, 2018, the Government filed a letter
responding to Defendants' First Restitution Letter.  (Dec. 11
Govt. Ltr.)  In its public filing, the Government enclosed a
redacted version of a letter dated December 10, 2018 from
counsel for Valeant also responding to Defendants' First
Restitution Letter, which the Government adopted in its entirety
and which was also filed under seal.  (Dec. 10 Victim Ltr.)  The
Government also filed four exhibits, one of which was filed
under seal.  (See Exhibit 4 to Dec. 11 Govt. Ltr, dated Dec. 11,
2018 [dkt. no. 229-5].)  On December 21, 2018, Defendants wrote

3

in further opposition to the Government's request.  (Dec. 21 Def. Ltr.)

## II.  LEGAL STANDARD

Federal courts "have no inherent power to order restitution," and, therefore, "[a] sentencing court's power to order restitution ... depends upon, and is necessarily circumscribed by, statute." United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012).  The statute at issue here, the Mandatory Victims Restitution Act ("MVRA"), mandates restitution where "an identifiable victim or victims has suffered a . . . pecuniary loss."  18 U.S.C. § 3663A(c)(1)(B).  A defendant must "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  Id. § 3663A(b)(4).

The Court of Appeals has explained that not all losses suffered by a victim may be compensable as restitution in a criminal case and not even all losses "directly and proximately caused by a defendant's offense" may be recovered; rather, "the harm must ... come within one of the categories enumerated in" the MVRA.  United States v. Maynard, 743 F.3d 374, 379 (2d Cir. 2014); see also United States v. Cuti, 708 F. App'x 21, 25 (2d Cir. 2017) ("Cuti II") ("We have noted the crucial distinction

4

between actions that merely 'helped' the prosecution and actions deemed truly necessary. The latter are compensable, and the former are not." (quoting United States v. Cuti, 778 F.3d 83, 95 (2d Cir. 2015) ("Cuti I"))). The Government bears the burden of establishing the loss amount under the MVRA, and "[a]ny dispute as to the proper amount ... of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e). However, "the MVRA requires only a reasonable approximation of losses supported by a sound methodology." United States v. Gushlak, 728 F.3d 184, 196 (2d Cir. 2013).

In Lagos v. United States, 138 S. Ct. 1684 (2018), the Supreme Court recently clarified the meaning of the phrase "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense" in § 3663A(b)(4) of the MVRA. The Court held that the MVRA provides restitution only for investigation expenses incurred during a victim's participation in "government investigations and criminal proceedings" and "does not cover the costs of a private investigation that the victim chooses on its own to conduct." Lagos, 138 S. Ct. at 1688, 1690; see also id. at 1689 ("Some [restitution] statutes specifically require restitution for the 'full amount of the victim's losses,' defined to include 'any ... losses suffered by the victim as a proximate result of the offense.' The Mandatory

5

Victims Restitution Act, however, contains no such language; it specifically lists the kinds of losses and expenses that it covers." (quoting 18 U.S.C. §§ 2248(b), 2259(b), 2264(b), 2327(b))).  This "narrow interpretation" is meant to alleviate district courts of the "significant administrative burdens" of resolving "these potentially time-consuming controversies as part of criminal sentencing," particularly "in cases involving multimillion[-]dollar investigation expenses for teams of lawyers and accountants."  Lagos, 138 S. Ct. at 1689.

## III. **DISCUSSION**

### A. **Valeant Qualifies as a Victim Under the MVRA**

A district court's "statutory authority to award restitution under the MVRA is limited to awards to victims of the offense of conviction."  United States v. Skowron, 839 F. Supp. 2d 740, 744 (S.D.N.Y. 2012) (quoting United States v. Archer, 671 F.3d 149, 170 (2d Cir. 2011)), aff'd, 529 F. App'x 71 (2d Cir. 2013).  Under the MVRA, a defendant convicted of "an offense against property ... including any offense committed by fraud or deceit" must make restitution to the victim.  18 U.S.C. § 3663A(c)(1)(A)(ii).

The MVRA defines a "victim" as a "person directly and proximately harmed as a result of" the offense.  Id. § 3663A(a)(2).  A defendant convicted of committing honest

services fraud and conspiracy to commit honest services wire
fraud is obligated to make restitution to the corporate victim
under the MVRA.  See United States v. Bahel, 662 F.3d 610, 647-
48 (2d Cir. 2011) (affirming that the defendant convicted of
honest services wire fraud owed restitution to his employer);
Skowron, 839 F. Supp. 2d at 749-52 (ordering the defendant,
convicted of wire fraud, to pay restitution to his former
employer, the victim of defendant's crimes).[2]

The Court finds that Valeant qualifies as a victim under
the MVRA because it suffered losses as a direct result of the
offenses for which Defendants were convicted.  18 U.S.C.
§ 3663A(a)(2).  In finding Defendants guilty of the crimes
charged, the jury found that Defendants defrauded Valeant.  (See
Judgment in a Criminal Case as to Gary Tanner ("Tanner
Judgment"), dated Nov. 27, 2018 [dkt. no. 222], 1-2; Judgment in
a Criminal Case as to Andrew Davenport ("Davenport Judgment"),
dated Nov. 27, 2018 [dkt. no. 224], 1-2; Superseding Indictment,
dated Aug. 30, 2017 [dkt. no. 66], ¶¶ 5, 7-11, 13-14, 16, 18.)
Moreover, in opposing the Government's restitution request on
behalf of Valeant, (see Nov. 20 Def. Ltr.; Dec. 21 Def. Ltr.),
as well as in seeking additional time to respond to "the

---

[2] The MVRA also applies to the other charges for which Defendants
were convicted.  See Zangari, 677 F.3d at 91 (applying MVRA to
Travel Act conspiracy); Gushlak, 728 F.3d at 190-91 (applying
MVRA to money laundering conspiracy).

voluminous materials recently provided to [Defendants] by
counsel for Valeant," (see Defendants' Restitution Briefing
Letter, dated Oct. 26, 2018 [dkt. no. 203], 1), and requesting
an extension of time to submit their objections to Valeant's
restitution claims, (see Defendants' Restitution Letter Motion,
dated Nov. 8, 2018 [dkt. no. 217], 1), Defendants never disputed
that Valeant was the identifiable victim of Defendants'
offenses.

### B. Valeant's Restitution Requests

#### i. $9,703,995.33 Payment from Davenport to Tanner, or Valeant's $8,000,000.00 Overpayment for the Option to Purchase Philidor Rx Services

First, Valeant seeks reimbursement for the $9,703,995.33
payment from Davenport to Tanner out of the funds received
personally by Davenport from Valeant's option to purchase
Philidor Rx Services ("Philidor"), or, alternatively, the
$8,000,000.00 that Valeant claims it over-paid for the option to
purchase Philidor due to the Defendants' "backchannel
scheming." (Oct. 23 VIS at 12, 14; Dec. 10 Victim Ltr. at 1-2.)
Specifically, Valeant argues that the Government "proved that
Defendants caused [Valeant] to incur many types of losses,"
including the "purchase of an option that turned out to be
worthless for $133 million cash plus additional consideration,
increasing the initial purchase price of that option by $8

8

million, and diverting [$9,703,995.33] of the purchase price from Davenport to Tanner." (Oct. 23 VIS at 9.)

The Court of Appeals has held that "a sentencing court ordering restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual loss" unless "there is a direct correlation between gain and loss, such that the defendant's gain can act as a measure of—as opposed to a substitute for—the victim's loss." Zangari, 677 F.3d at 93; see, e.g., United States v. Berardini, 112 F.3d 606, 607-10 (2d Cir. 1997) (finding a direct correlation between income defendant gained from fraudulent telemarketing sales and victims' losses because every dollar gained by defendant was necessarily lost by victims who paid for the fraudulent products).

Defendants argue that "Valeant paid a fair price for the option to purchase Philidor," and as such, the company "cannot prove any 'loss' or 'overpayment' as a result of the deal it entered into with Philidor." (Nov. 20 Def. Ltr. at 2.) Indeed, it is Defendants' position that "Philidor agreed to be sold to Valeant for a price that was far less than it was worth" and suggested that the Court hold a Fatico hearing on the issue of the value of the option. (Id. at 2-3.)

9

As a threshold matter, the Court finds that given the ample trial record, there is no need for such a hearing.  "There is no per se right to a Fatico hearing, and trial courts enjoy broad discretion in determining what procedures to employ at sentencing."  United States v. Rutigliano, 614 F. App'x 542, 547 (2d Cir. 2015); United States v. Romano, 825 F.2d 725, 728 (2d Cir. 1987) ("It is well established, for instance, that a defendant has no right to a full-blown evidentiary hearing at sentencing[.]").  "The district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes.  All that is required is that the court ... 'afford the defendant some opportunity to rebut the Government's allegations.'"  United States v. Slevin, 106 F.3d 1086, 1091 (2d Cir. 1996) (citations omitted).  Indeed, in United States v. Babilonia, 687 F. App'x 63, 67 (2d Cir. 2017), the Court of Appeals affirmed the district court's refusal to hold a Fatico hearing on the defendant's role because "that determination did not involve a new issue on which [the defendant] had not been heard."  Given the facts established at the trial in this case and Defendants' opportunity to be heard on this issue, there is no need for a hearing.

Valeant argues "there is a 'direct correlation' between" the $9,703,995.33 Davenport paid Tanner "and the loss suffered

by [Valeant] in connection with the Philidor purchase option transaction. The [$9,703,995.33] of option proceeds that Davenport immediately and secretly transferred to Tanner was not just a kickback — it represented an inflated purchase price for which Valeant received no additional value." (Oct. 23 VIS at 13.) In support of this argument, the Government added: "[i]t is simple common sense that Davenport's payment of the [$9,703,995.33] kickback to Tanner evinced a willingness on Davenport's part to accept an option purchase price of [$9,703,995.33] less than what he negotiated. Absent the kickback, Valeant would have been able to pay [$9,703,995.33] less for the Philidor option." (Dec. 11 Govt. Ltr. at 1-2.)

These speculative, _ipse dixit_ arguments are weak, at best. Neither the Government nor Valeant has sufficiently shown that Defendant's "gain can act as a _measure_ of [Valeant's] loss," _Zangari_, 677 F.3d at 93, because they have failed to show that the $9,703,995.33 "loss" — or, as Valeant contends, the $9,703,995.33 it "was deprived of," (Oct. 23 VIS at 13) — was "a _necessary_ consequence of ... the kickback[]." _United States v. Napout_, No. 15-CR-252 (PKC), 2018 WL 6106702, at *10 (E.D.N.Y. Nov. 20, 2018) (quoting _United States v. Finazzo_, 850 F.3d 94, 118 (2d Cir. 2017)). Consequently, "[n]o such measure is available here." _Napout_, 2018 WL 6106702, at *10; _see also_ _Finazzo_, 850 F.3d at 118-19 ("Given that we require a 'direct

11

correlation' between a defendant's gain and a victim's loss in order for restitution to be measured according to that gain, it is not a sufficiently sound methodology for the district court to merely assume that the kickbacks were solely justified by inflated prices.").

Instead, given the broad discretion this Court has to fashion a restitution reward, see Gushlak, 728 F.3d at 190 (noting restitution orders under the MVRA are reviewed for abuse of discretion and the trial court's findings of fact are subject to clear error review), the Court agrees with Defendants that they should not be required to pay Valeant $1,703,995.33 more than its claimed actual harm of $8,000,000.00. (Dec. 21 Def. Ltr. at 2.) This actual claimed loss, which is clearly established by the trial evidence, (see Oct. 23 VIS at 3, 11-12 (citing Supporting Documents for Non-Party Bausch Health Companies Inc.'s Victim Impact Statement ("Oct. 23 VIS Docs."), dated Oct. 23, 2018, Ex. 1(c) (Government Exhibit ("GX") 100-97); id. at Ex. 1(g) (GX 101-47); id. at Ex. 1(h) (GX 100-101); id. at Ex. 1(f) (GX 100-105); id. at Ex. 1(i) (GX 100-119); id. at Ex. 1(j) (GX 100-114); id. at Ex. 1(k) (GX 100-125); id. at Ex. 1(l) (GX 100-130); id. at Ex. 1(m) (GX 707); May 9, 2018 Trial Transcript ("May 9, 2018 Tr."), dated June 13, 2018 [dkt. no. 149], 540:2-541:13, 553:19-559:8, 568:11-17, 560:25-561:15, 569:6-10, 569:13-16, 571:13-18, 573:19-23, 576:9-577:7, 1423:22-

12

1437:15, 578:6-16)), is the best way to account for the
financial harm Valeant suffered at Defendants' hands.
Accordingly, the Court finds that Valeant is entitled to receive
$8,000,000.00 for the additional amount it paid Philidor for the
option but that it is not entitled to receive $9,703,995.33,
reflecting the option proceeds Davenport passed along to Tanner.

### ii.   Valeant's $912,910.84 Overpayment to Philidor Under the July 2013 Distribution Services Agreement

Next, Valeant argues that it is entitled to $912,910.84,
the amount it claims it overpaid Philidor as a result of the
Defendants' securing a larger discount on the Valeant products
sold by Philidor under the July 2013 Distribution Services
Agreement ("DSA").  (Oct. 23 VIS at 14; Dec. 10 Victim Ltr. at
2.)  Specifically, Valeant argues that Tanner revised the DSA to
increase Philidor's discount on Valeant products from 3.5
percent to 4 percent off of the Wholesale Acquisition Cost
("WAC") under the DSA, despite Davenport's willingness, as
indicated by the trial evidence, to agree to a 3.5 percent
discount.  (See Oct. 23 VIS at 14-15 (July 17, 2013 email chain
between Tanner and Davenport where Davenport says he is willing
to agree to only a 3.5 percent discount from WAC, and Tanner
replies "I think we can get to 4%" (quoting Oct. 23 VIS Docs. at
Ex. 1(b) (GX 100-9))); id. at 15 (July 17, 2013 email from
Tanner discussing the DSA, where he writes: "the fully inclusive

rate will be 4% from WAC" (quoting Oct. 23 VIS Docs. at Ex. 1(a)
(GX 100-160)))).)

The clear import of these emails is that Davenport would
accept a 3.5 percent discount and Tanner said he would try to –
and did – get a 4 percent discount.  The trial evidence shows
that Tanner never disclosed to Valeant that Davenport would
accept a 3.5 percent discount.  (See Dec. 10 Victim Ltr. at 2
n.2 (during the direct examination of Laizer Kornwasser
("Kornwasser") the Government asked, "I want to refer now to the
part of the email we just looked at where Mr. Tanner wrote: 'A
fully inclusive rate will be 4 percent from WAC.' Do you see
that?" to which Kornwasser replied, "Yes, I do." The Government
then asked, "Did Mr. Tanner ever disclose to you whether
Philidor was willing to pay more and accept a 3.5 percent rather
than a 4 percent discount?" to which Kornwasser replied, "No, he
did not." (quoting May 14, 2018 Trial Transcript ("May 14, 2018
Tr."), dated June 13, 2018 [dkt. no. 153], 920:16-24)).)
Furthermore, the evidence shows that, as a result, Valeant was
harmed because the extra 0.5 percent discount decreased the
amount Philidor paid Valeant for its products.  (Oct. 23 VIS at
15 (during the direct examination of Kornwasser the Government
asked, "Now, can you remind the jury, in which of the two
scenarios, 3-and-a-half percent or 4 percent, did Valeant make
more money?" to which Kornwasser replied, "Valeant would make

14

more money under 3-and-a-half percent." (quoting May 14, 2018
Tr. at 950:1-4)).)

Defendants contend that "[a] review of Valeant's contracts
with other entities, including wholesalers and other retail
channels, indicates payment terms equal to or better than
Valeant's terms with Philidor." (Nov. 20 Def. Ltr. at 3.)  The
Court finds this fact wholly irrelevant to this issue,
particularly considering the substantial and relevant trial
evidence cited above.  Accordingly, the Court finds Valeant is
entitled to the $912,910.84 it overpaid Philidor under the DSA.

### iii. 20 Percent, or $150,177.80, of Tanner's Compensation

Valeant also argues that it is entitled to restitution for
20 percent of the more than $750,000.00 Tanner was paid in
salary and bonuses by Valeant while he was engaged in the
scheme, or, specifically, $150,177.80.  (Oct. 23 VIS at 16, 18.)
"The MVRA requires restitution of the value of a victim's
property."  Skowron, 839 F. Supp. 2d at 749 (citing 18 U.S.C.
§ 3663A(b)(1)).  According to the Court of Appeals, under the
MVRA, an employer should be reimbursed for compensation it paid
an employee when the "employer pays for honest services but
receive[d] something less."  Skowron, 839 F. Supp. 2d at 750
(quoting Bahel, 662 F.3d at 649).  Under the MVRA, the
"property" lost by an employer consists of "the difference in

the value of the services that [the defendant] rendered ... and
the value of the services that an honest [employee] would have
rendered." Bahel, 662 F.3d at 649.

Often, the percentage of an employee's salary subject to
restitution is an approximation and a "conservative estimate of
the cost of the fraud." Id. at 650; see also Skowron, 839 F.
Supp. 2d at 752 ("[A] court may order restitution approximating
the value of the deprived honest services where, as here,
attempting to calculate the employer's precise loss would force
the court into unduly burdensome calculations."). In those
circumstances, where the specific amount of compensation
attributable to the fraud cannot readily be determined, the
Court of Appeals has upheld restitution awards of 20 percent of
the defendant's compensation during the scheme. See, e.g.,
Skowron, 529 F. App'x at 73 (affirming the district court's
order which included 20 percent of the defendant's salary during
his period of the offense); Napout, 2018 WL 6106702, at *3
(holding defendants had to repay 20 percent of the salaries and
benefits they received from the victim upon finding the 20
percent "approach is appropriate ... because it would be 'unduly
complex to try to delineate' the amount that [the victim] paid
to, or on behalf of, Defendants that was strictly related to
Defendants' 'dishonest services'" (quoting Bahel, 662 F.3d at
650)); United States v. Ebrahim, No. 12-CR-471 (JPO), 2013 WL

16

2216580, at *3 (S.D.N.Y. May 21, 2013) (ordering 20 percent of the defendant's salary in restitution, following Skowron). Defendants' argument that, in seeking 20 percent of Tanner's compensation, Valeant "picked an arbitrary number" simply ignores this established precedent.   (Nov. 20 Def. Ltr. at 5.) As discussed in Section III(A), supra, Valeant is the victim of Defendants' scheme under the MVRA.

As such, "in the case of an offense resulting in damage to or loss or destruction of [Valeant's] property," it is entitled to the "return [of its] property...."  Bahel, 662 F.3d at 649 (citation omitted).  Valeant paid Tanner with the expectation that it would receive his honest services.  Part of that expectation was that Tanner would not act contrary to Valeant's interests.  However, as the jury determined at trial, Tanner did just that.  Under these circumstances, some portion of Tanner's compensation is recoverable under the MVRA.  Accordingly, in keeping with this Court's precedent and finding it "would be 'unduly complex to try to delineate' which part of the funds received by [Tanner] were 'paid for honest services and which part was paid for dishonest services,'" Napout, 2018 WL 6106702, at *3 (quoting Bahel, 662 F.3d at 650)), the Court finds that Valeant may recover $150,177.80, or 20 percent of the compensation paid to Tanner during Defendants' scheme.

### iv.   $3,553,933.37 for the Legal Fees of Covington & Burling LLP ("Covington"), Valeant's Attorneys

Next, Valeant seeks $3,553,933.37 for the legal fees of Covington & Burling LLP ("Covington"), Valeant's attorneys. (Oct. 23 VIS at 20.)  Specifically, Valeant requests:   (1) $1,579,140.10 for the fees incurred in responding to Defendants' subpoena, (Dec. 10 Victim Ltr. at 3-4); (2) $148,851.50 for the fees incurred in connection with Covington's attendance at pre-trial proceedings and pre-trial review of filings, (id. at 4-5); (3) $55,000.00 for the fees incurred in attending pre-trial meetings with the Government, (id. at 5-6); (4) $130,000.00[3] for the fees incurred in preparing for and attending and monitoring Defendants' trial, (id. at 6-7); and (5) $1,640,941.77[4] for other fees incurred.  (Id. at 7.)  As set forth below, the Court denies Valeant's first two restitution requests in their entirety, grants Valeant's third and fourth requests in their entirety, and reduces the restitution amount in Valeant's fifth request by 10 percent.  Adding together the $55,000.00 in connection with Valeant's third restitution request, $130,000.00 in connection with its fourth restitution request, and the

---

[3] Valeant seeks "approximately $55,000," (id. at 6), and "approximately $130,000."  (Id.)  For the sake of computing the final restitution amount, the Court treated these as exact, rather than approximate, numbers.
[4] This figure was calculated by subtracting $1,579,140.10, $148,851.50, $55,000.00, and $130,000.00 from the total fees requested, $3,553,933.37.

$1,476,847.59 in connection with its fifth restitution request,
Defendants are liable to Valeant for $1,661,847.59 in total in
restitution for the fees related to Covington's representation
of Valeant.

### 1. Covington-Related Restitution Request 1: $1,579,140.10 for the Fees Incurred in Responding to Defendants' Subpoena

The Court acknowledges first and foremost that the Court of
Appeals has held that "[a]ttorneys' fees are 'other expenses'
that are properly included within a restitution award." Bahel,
662 F.3d at 647.  In support of its argument that it is entitled
to $1,579,140.10 for the attorneys' fees incurred in responding
to Defendants' subpoena, Valeant cites United States v. Gupta,
925 F. Supp. 2d 581, 587-88 (S.D.N.Y. 2013), aff'd, 747 F.3d 111
(2d Cir. 2014), noting that "[t]he [Gupta] court approved 90% of
the total restitution request, including for time spent
responding to the defendant's subpoena."  (Dec. 10 Victim Ltr.
at 4.)  However, Gupta predates Lagos, which has imposed a "more
limited reading of the statute" than existed at the time Gupta
was decided by the district court and subsequently affirmed by
the Court of Appeals.  Lagos, 138 S. Ct. at 1686.

In fact, on the heels of the Lagos decision, several courts
have already started to question the validity of previously
imposed restitution orders.  See, e.g., United States v.

19

Walters, 910 F.3d 11, 16 (2d Cir. 2018) (vacating the order of restitution and remanding the case "for the district court to reconsider restitution in light of the Supreme Court's decision in Lagos"); United States v. Cornelsen, 893 F.3d 1086, 1091 (8th Cir. 2018) (vacating a portion of the restitution order "[i]n light of Lagos" upon acknowledging "Lagos appears to run contrary to our precedent"); United States v. Razzouk, No. 11-CR-430 (ARR), 2018 WL 3574868, at *2 (E.D.N.Y. July 25, 2018) ("Because I agree with the parties that Lagos may affect the award of restitution to [the victim] for its investigative costs, I grant defendant's motion to stay this portion—and only this portion—of the restitution order.")

Accordingly, the Court must give little, if any, weight to Defendants' reliance on Gupta in considering Valeant's restitution request.  Instead, in following our sister court's interpretation of Lagos "as limiting restitution to expenses incurred for investigatory activities that the government expressly and specifically 'invited or requested,'" Napout, 2018 WL 6106702, at *4, the answer is quite simple:  reimbursement for the $1,579,140.10 in fees incurred in responding to Defendants' subpoena is denied in its entirety because Defendants, not the Government, served Valeant with a subpoena.

### 2. Covington-Related Restitution Request 2: $148,851.50 for the Fees Incurred in Connection with Covington's Attendance at Pre-Trial Proceedings and Pre-Trial Review of Filings

In support of its second request for $148,851.50 in fees incurred in connection with Covington's attendance at pre-trial proceedings and pre-trial review of filings, Valeant cites to United States v. Sazonov, No. 17-CR-657 (SDA), a case before Magistrate Judge Stewart D. Aaron of this Court, in which "Tanner's counsel Brendan McGuire of WilmerHale sought and received a restitution award for his corporate client" for similar types of pre-trial expenses and, despite the defendant's request that Magistrate Judge Aaron set aside his previously-imposed restitution order in light of the later-filed Lagos decision, he affirmed it.  (Dec. 10 Victim Ltr. at 5 (citing Endorsed Letter, United States v. Sazonov, No. 17-CR-657 (SDA), dated Feb. 16, 2018 [dkt. no. 36]; Endorsed Letter, United States v. Sazonov, No. 17-CR-657 (SDA), dated June 6, 2018 [dkt. no. 47]; Order, United States v. Sazonov, No. 17-CR-657 (SDA), dated June 6, 2018 [dkt. no. 48]).)  The Court finds little support for Valeant's argument in Sazonov because the underlying facts of that case relevant to this issue are inapposite.

In Sazonov, in response to the defendant's request, (see Letter Motion, United States v. Sazonov, No. 17-CR-657 (SDA), dated May 29, 2018 [dkt. no. 44]), the Government filed a letter

21

detailing the expenses that the victim "incurred in connection
with the presentation to the Government of the facts at issue
and cooperation with the law enforcement investigation of the
defendant's criminal conduct."  (Letter, United States v.
Sazonov ("Sazonov Govt. Ltr."), No. 17-CR-657 (SDA), dated June
5, 2018 [dkt. no. 46], 2.)  The Government argued:

> [I]n anticipation of a more thorough presentation to
> the Government, which took place on February 27, 2017,
> [the victim] retained the firm K2, which conducted a
> forensic analysis of the defendant's attempts to steal
> [the victim's] proprietary information.... After that
> presentation, between the end of February 2017 and
> October 2017, [the victim] incurred additional
> expenses in precisely the ways one might expect of a
> corporation cooperating with a Government
> investigation: responding to law enforcement requests,
> participating in interviews conducted by law
> enforcement officers, and communicating with law
> enforcement officials regarding the investigation and
> prosecution of the defendant.

(Id. at 3.)

     Unlike Valeant's expenses, the Sazonov victim's expenses
described above were clearly incurred in connection with work
done at the "express[] and specific[] 'invitat[ion] or
request[]'" of the Government.  Napout, 2018 WL 6106702, at *4.
In the instant case, the Court is wholly unconvinced by
Valeant's argument that "throughout the investigation and
prosecution of this case, the government demanded the production
of evidence, and Valeant needed to be aware of how the
government used that evidence and anticipate whether the

government or Defendants would make further demands on the company...." (Dec. 10 Victim Ltr. at 5.) The MVRA makes no provision for the victim's ruminating about how the Government will use the evidence provided or whether it would request additional evidence.

Furthermore, the Court finds that Valeant's "reviewing the charges against Defendants, reviewing filings concerning Defendants' pre-trial motions, and attending some of the related proceedings," (id. at 4), such as Defendants' arraignment, (Nov. 20 Def. Ltr. at 8), are not akin to "responding to law enforcement requests, participating in interviews conducted by law enforcement officers, and communicating with law enforcement officials regarding the investigation and prosecution of the defendant," the fees for which the Court in Sazonov found compensable. (Sazonov Govt. Ltr. at 3.) Yet again the Court finds that, unlike the victim in Sazonov, it is not clear that Valeant conducted this work at the Government's "express[] and specific[] 'invitat[ion] or request[].'" Napout, 2018 WL 6106702, at *4.

The Court anticipates Valeant's taking issue most with its finding that the company is not entitled to reimbursement for its attorneys' attendance at "related [pre-trial] proceedings," (Dec. 10 Victim Ltr. at 4), and questioning how this differs at

all from their attending and monitoring the Defendants' trial,
which, as discussed in Section III(B)(iv)(4), infra, the Court
finds compensable under the MVRA. The Lagos line, "a victim
'participat[es] in the investigation' or 'attend[s] ...
proceedings related to the offense' if the investigation at
issue is a government's criminal investigation, and if the
proceedings at issue are criminal proceedings conducted by a
government" must not be read in isolation to mean that the
expenses incurred in attending any proceeding conducted by the
Government automatically must be reimbursed. Lagos, 138 S. Ct.
at 1688. Courts determining whether certain expenditures
qualify as compensable "other expenses" under 18 U.S.C.
§ 3663A(b)(4) are instructed by Lagos to compare the expenditure
at issue to the "three specific items that must be reimbursed":

> Lost income, child care expenses, and transportation
> expenses are precisely the kind of expenses that a
> victim would be likely to incur when he or she (or,
> for a corporate victim like GE, its employees) misses
> work and travels to talk to government investigators,
> to participate in a government criminal investigation,
> or to testify before a grand jury or attend a criminal
> trial.

Lagos, 138 S. Ct. at 1688.

Although this passage from Lagos explicitly lists
"attend[ing] a criminal trial," it says nothing about attending
a criminal pre-trial proceeding. Id. Moreover, the other
enumerated compensable expenses listed here – "talk[ing] to

government investigators," "participat[ing] in a government criminal investigation," and "testify[ing] before a grand jury," id., all tend toward the same "limited interpretation," id. at 1690: victim expenses are reimbursable only where the Government "expressly and specifically 'invite[s] or request[s]'" that the victim engage in a certain activity. See Napout, 2018 WL 6106702, at *4.

In following this reasoning, the Court finds that, given the particular circumstances, a victim or its counsel's attendance at a pre-trial proceeding where the victim or its counsel has been "expressly and specifically 'invited or requested,'" id., by the Government to "talk," "participate," "testify," or otherwise engage with the Government, may be compensable under the MVRA. Lagos, 138 S. Ct. at 1688. However, as is the case here, a victim or its counsel's attendance at a pre-trial proceeding where the victim or its counsel is only present "to review, understand, and analyze those court ... appearances," on its own accord and for its own interests, (Dec. 10 Victim Ltr. at 5), is more akin to a "victim['s] ... private investigation of an offense," which Lagos explicitly held was not compensable under the MVRA. 138 S. Ct. at 1688. Accordingly, Valeant's request for $148,851.50 in fees incurred in connection with Covington's attendance at

pre-trial proceedings and pre-trial review of filings is denied
in its entirety.

### 3. Covington-Related Restitution Request 3: $55,000.00 for the Fees Incurred in Attending Pre-Trial Meetings with the Government

The Court finds the $55,000.00 in fees incurred when
Covington attended meetings with the Government compensable
because "the government requested that the company's counsel
participate in portions of those meetings...." (Dec. 10 Victim
Ltr. at 5.)  See also Napout, 2018 WL 6106702, at *8 (finding
victim entitled to "attorneys' fees for responding to specific
government requests").

### 4. Covington-Related Restitution Request 4: $130,000.00 for the Fees Incurred in Preparing for and Attending and Monitoring Defendants' Trial

Valeant also requests $130,000.00 in fees related to
Covington's preparation for, attendance at, and monitoring of
Defendants' trial.  As to preparing for trial, there is no
dispute that Kelly Webber ("Webber"), Jacquelyn Nascimento
("Nascimento"), and Cheryl Volker ("Volker"), three individuals
represented by Covington, were called as witnesses at trial by
the Government.  (May 10, 2018 Trial Transcript ("May 10, 2018
Tr."), dated June 13, 2018 [dkt. no. 151], 789:16 (calling
Webber); May 16, 2018 Trial Transcript, dated June 13, 2018
[dkt. no. 157], 1375:5-6 (calling Nascimento); id. at 1388:25-

1389:1 (calling Volker).)  See also Napout, 2018 WL 6106702, at
*4 & n.4 (finding the victim's request for fees "in connection
with [the victim's employee's] testimony" compensable under the
MVRA where "[t]here is no dispute that [the victim's employee]
was called as a witness at the government's request").  The
Court further recognizes that Defendants do not contest that
"Covington also represented a fourth witness, Asha Soto, whom
the government asked to fly to New York twice from California,
met with in anticipation of her testimony, but then did not call
to testify."  (Dec. 10 Victim Ltr. at 6.)

Because it is an indisputable fact that Covington
represented several Government witnesses at Defendants' trial,
the Court will not split hairs determining if additional,
related fees incurred in preparing for Defendant's trial are
compensable.  (See Nov. 20 Def. Ltr. at 9.)  Besides, the
Supreme Court made clear that the purpose of Lagos was to
streamline courts' analyses of restitution requests and
"limit[]" the amount of time courts spend "resolv[ing] ... time-
consuming controversies as part of criminal sentencing."  Lagos,
138 S. Ct. at 1689-90.

Defendants next argue that the fees incurred in connection
with Covington's attendance at and monitoring of Defendants'
trial are not compensable because Covington was only present at

trial "to service the company's own interests" and not "to
assist the government or represent trial witnesses." (Nov. 20
Def. Ltr. at 9.) However, according to Valeant, Covington
"attended trial because of the risk that the parties would seek
to elicit evidence protected by the company's attorney-client
privilege" and "[i]ndeed, Defendants did seek to elicit
privileged evidence at trial and Covington objected on the
spot." (Dec. 10 Victim Ltr. at 6.) The Court agrees with
Valeant that Covington's attendance and participation at
Defendants' trial was very different from the circumstances in
Cuti II, 708 F. App'x at 24, where the victim's attorneys played
no role in the trial, and simply attended, reviewed transcripts,
and drafted summaries and press releases in order to "remain
'abreast' of the events of the trial."

Furthermore, Covington's attendance at and participation in
Defendant's trial is distinguishable from the victim's
attendance at the defendant's trial in Napout, the fees for
which the Napout court found were not reimbursable under the
MVRA. Napout, 2018 WL 6106702, at *4. In Napout, the Court
found:

> [A]s [the victim] itself concedes, the government did
> not approach [the victim] and ask it to investigate,
> but rather, '[the victim] proactively approached the
> Government to open a dialogue after the [May 27, 2015]
> Indictment was unsealed' because '[the victim] was
> motivated, at least in part, by a desire to

28

demonstrate its cooperation, preserve its victim
status, and avoid prosecution in any future
indictment.'

Id.

The Napout court went on:  "even if, as [the victim]
contends, the government 'suggested that [an attorney from
victim's company counsel] attend the trial in the event that any
issues arose that directly impacted [the victim],' this request
appears to relate to [the victim's] potential criminal exposure,
not the government's investigation."  Id.  The Napout court is
correct that a "corporation acting out of self-preservation
cannot turn around and have its costs reimbursed through
restitution."  Id.  However, that is not the case here.  Valeant
has always been identified as the victim of Defendants' scheme;
the company's participation in Defendants' criminal trial was
never related to its own "potential criminal exposure."  Id.
Instead, the company helped facilitate testimony at the trial.
(See Dec. 10 Victim Ltr. at 6 n.4 (during the trial, Valeant's
counsel, Nancy Kestenbaum stated, "Your Honor, if I could be
heard. We dispute Ms. Bonaccorsi's assertion that when Valeant
consented for Mr. Hess to represent Philidor, Valeant provided
that type of waiver of its own attorney-client privilege. It did
not." (quoting May 15, 2018 Trial Transcript ("May 15, 2018
Tr."), dated June 13, 2018 [dkt. no. 155], 1349:18-22)).)

29

Although the Court agrees with Defendants that the "standard for restitution does not concern itself with the private incentives of the victim," Cuti II, 708 F. App'x at 24, as the Court has already noted, see Section III(B)(iv)(2), supra, the Supreme Court in Lagos included a victim's attendance at a criminal trial as a proper category of restitution.  See Lagos, 138 S. Ct. at 1688 (discussing how a victim's attendance at a criminal trial is an example of "precisely the kind of expenses" covered by the MVRA).  Accordingly, given the necessity of Covington's preparing for, attendance at, and monitoring of the criminal trial in this case, the Court finds it a proper basis for restitution and grants Valeant's request for $130,000.00 in its entirety.

### 5. Covington-Related Restitution Request 5: $1,640,941.77 for Other Fees Incurred

Finally, Defendants request an unspecified "across-the-board percentage reduction" in connection with other fees sought by Covington, which total $1,640,941.77.  (Nov. 20 Def. Ltr. at 10.)  Under the MVRA, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."  18 U.S.C. § 3664(e).  Defendants argue that certain hours Covington attorneys spent representing Valeant were unreasonable and that specific tasks undertaken by the law firm were unnecessary — especially "in

30

light of the sheer number of [total] hours" that Covington
billed.  (Nov. 20 Def. Ltr. at 10.)

The Court of Appeals "has not yet ruled on the question of
whether district courts 'ha[ve] a duty to scrutinize the [amount
of] attorneys' fees' requested pursuant to the MVRA." Napout,
2018 WL 6106702, at *5 (quoting United States v. Donaghy, 570 F.
Supp. 2d 411, 431 (E.D.N.Y. 2008), aff'd sub nom. United States
v. Battista, 575 F.3d 226 (2d Cir. 2009)).  In Donaghy, the
Court of Appeals explained:

> Since the goal of restitution is to make the victim
> whole, there is an argument to be made that as long as
> the Court is satisfied that the attorneys' fees were
> incurred for the purpose of assisting the government
> in the investigation and prosecution of these
> offenses, and were in fact paid by the victim, the
> Court need go no further. Specifically, it need not
> further examine the request with the proverbial green
> eyeshade as it might do in reviewing a fee application
> of a prevailing party in a civil case to determine
> whether the hours were reasonably spent or the hourly
> rates appropriate. On the other hand, it could also be
> argued that although reasonable attorneys' fees are a
> 'direct and foreseeable' investigation cost within the
> scope of subsection (b)(4) [of the MVRA], excessive
> attorneys' fees are not.

Id.

However, courts in this circuit have reduced attorneys'
fees in connection with restitution proceedings where they have
"exceeded what was reasonably necessary under the MVRA." See,
e.g., Gupta, 925 F. Supp. 2d at 587-88 (reducing attorneys' fees
by 10 percent "in an excess of caution" where "on a few

31

occasions, the number of attorneys staffed on a task—while
perhaps perfectly appropriate on the assumption that [the
victim] wished to spare no expense on a matter of great
importance to it—exceeded what was reasonably necessary under
the MVRA"); Ebrahim, 2013 WL 2216580, at *4 ("[T]he Court's
review of Sullivan & Cromwell [L]LP's billing records suggests
that some of the billing may have been, in some discrete
instances, excessive. It also appears that there was an
unnecessary [number] of lawyers involved in certain tasks.
Following Judge Rakoff's lead in Gupta, this Court therefore
will deduct ten percent of the fees requested" based on the
sheer number of hours and number of attorneys); United States v.
Qurashi, No. 05-CR-498 (SJF)(AKT), 2009 WL 10677000, at *27
(E.D.N.Y. Sept. 1, 2009) (reducing the attorneys' fees by 10
percent), report and recommendation adopted, No. 05-CR-498
(SJF)(AKT), 2009 WL 10677129 (E.D.N.Y. Sept. 30, 2009), aff'd
and remanded, 634 F.3d 699 (2d Cir. 2011).

    Based on a review of the submitted records, and giving due
consideration to the Government, Defendants, and Valeant's views
on Valeant's requests and the applicable, though limited, case
law on this issue, the Court finds that Valeant's requested
attorneys' fees in this category are excessive. See Napout,
2018 WL 6106702, at *6. Recognizing the "crucial distinction
between actions that merely 'helped' ... the prosecution and

actions deemed truly necessary," Cuti II, 708 F. App'x at 25
(quoting Cuti I, 778 F.3d at 95), the Court finds that a
considerable amount of time that Covington spent representing
Valeant in this case was not "truly necessary" to assist the
Government's investigation and prosecution of Defendants.  For
instance, Covington's billing records show that over 350 hours
were spent attending to a binder of documents related to an
interview of Robert Chai-Onn, an individual whom was represented
by a different firm, Dechert LLP.  (Nov. 20 Def. Ltr. at 10.)

In agreeing with Defendants that this category of
attorneys' fees are excessive and "[f]ollowing Judge Rakoff's
lead in Gupta," Ebrahim, 2013 WL 2216580, at *4, the Court
reduces the $1,640,941.77 in other fees incurred by 10 percent.
Accordingly, as Valeant is therefore entitled to $1,476,847.59
in connection with this fifth and final restitution request, as
well as the $55,000.00 in connection with Valeant's third
restitution request, and $130,000.00 in connection with its
fourth restitution request, Defendants are liable to Valeant for
$1,661,847.59 in total in restitution for the fees related to
Covington's representation of Valeant.

### v.   $1,145,347.12 for the Legal Fees of Six Law Firms That Represented Valeant Employees

Valeant also seeks $1,145,347.12 for the legal fees of six
law firms that represented Valeant employees.  (Dec. 10 Victim

Ltr. at 7.)  Defendants do not challenge any of the fees and
costs reflected in the billing records submitted by the
following five law firms that represented individuals:  Foley
Hoag LLP; Petrillo Klein & Boxer LLP; Kramer Levin Naftalis &
Frankel LLP; Dechert LLP; and Schulte Roth & Zabel LLP.  (Nov.
20 Def. Ltr. at 11.)  Defendants only contest Valeant's
entitlement to $316,587.44 – the fees incurred by the sixth law
firm, Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), which
represented Government witness Kornwasser – out of the
$1,145,347.12 in total fees incurred by all six law firms.
(Dec. 21 Def. Ltr. at 3.)  Accordingly, Defendants do not
dispute that Valeant is entitled to $828,759.68[5] outright for the
legal fees of the five other law firms.

Out of the $316,587.44 in Milbank fees, Defendants only
challenge a total of $123,000.00.[6]  (Id.)  Accordingly,
Defendants do not dispute that Valeant is entitled to
$193,587.44[7] in connection with Milbank's representation of
Kornwasser.  As to the $123,000.00 they do contest, Defendants
argue that any restitution order in this case should

---

[5] This figure was calculated by subtracting $316,587.44 from the
total fees requested, $1,145,347.12.
[6]  This figure was calculated by adding together the five
individual figures in the five contested categories of legal
work listed in this section as (1) through (5).
[7] This figure was calculated by subtracting $123,000.00 from the
total Milbank fees challenged, $316,587.44.

specifically reduce the fees incurred by Milbank related to the following categories of legal work:  (1) $60,000.00 for the fees incurred in preparing for and attending pre-trial proceedings and attending trial proceedings where Kornwasser did not testify, (id. 3-4); (2) $34,000.00 for the fees incurred in preparing for Kornwasser's testimony, (id. at 4-5); (3) $10,000.00 for the fees incurred discussing the case with Covington attorneys or preparing for calls and meetings with Covington, (id. at 5); (4) $3,000.00 for the fees incurred reviewing press reports regarding the case, (id.); and (5) $16,000.00 for other fees incurred.[8]  (Id. at 5-6.)  As set forth below and commensurate with the Court's earlier findings as to Covington's fees, see Section III(B)(iv), supra, the Court grants Valeant's first two restitution requests in their entirety, denies Valeant's third and fourth requests in their entirety, and reduces the restitution amount in Valeant's fifth request by 10 percent.  Adding together the $60,000.00, $34,000.00, and $14,400.00 in contested Milbank fees the Court finds Valeant is entitled to, Defendants are liable to Valeant

---

[8] Defendants set forth that Valeant seeks "approximately $60,000," (id. at 3), "approximately $34,000," (id. at 4), "approximately $10,000," (id. at 5), "approximately $3,000.00," (id.), and "approximately $16,000."  (Id. at 6.)  For the sake of computing the final restitution amount, the Court treated these as exact, rather than approximate, numbers.

for $108,400.00 in restitution for the contested fees related to Milbank's representation of Kornwasser.

Accordingly, in adding the $828,759.68 Defendants do not dispute that Valeant is entitled to outright for the legal fees of the five other law firms, the $193,587.44 Defendants do not dispute Valeant is entitled to outright in connection with Milbank fees, and $108,400.00 of the contested Milbank fees that the Court finds Valeant is entitled to, Defendants are liable for $1,130,747.12 in total in restitution for the work of the six law firms that represented Valeant employees.

### 1. Milbank-Related Restitution Request 1: $60,000.00 for the Fees Incurred in Preparing for and Attending Pre-Trial Proceedings and Attending Trial Proceedings Where Kornwasser Did Not Testify

First, the Court finds Milbank's preparing for pre-trial proceedings is distinguishable from Covington's pre-trial review of filings, the fees for which the Court has already found are not compensable. See Section III(B)(iv)(2), supra. Milbank did not merely ruminate about what the Government would request of it; rather, the law firm "prepar[ed] for ... pre-trial conference[s]," (Dec. 21 Def. Ltr. at 3), and "engag[ed] in 'trial strategy,'" (id. at 4), in the course of preparing Kornwasser for his testifying as a Government witness on May 14, 2018 and May 15, 2018. (See May 14, 2018 Tr. at 899:25-900:2,

36

902:6-8, 902:11-943:22, 944:15-1001:14, 1006:8-1012:24, 1022:5-
1059:6, 1061:3-1065:25, 1071:2-1085:12, 1085:15-1092:9, 1104:7-
1114:19; May 15, 2018 Tr. at 1166:6-1169:25, 1172:1-1217:3.)

Second, as to fees incurred in attending pre-trial
proceedings, the fees of Milbank and Covington are again
distinguishable.  The Court has already held that "given the
particular circumstances, a victim or its counsel's attendance
at a pre-trial proceeding where the victim or its counsel has
been 'expressly and specifically "invited or requested,"' id.,
by the Government to 'talk,' 'participate,' 'testify,' or
otherwise engage with the Government, may be compensable under
the MVRA."  Section III(B)(iv)(2), supra (quoting Napout, 2018
WL 6106702, at *4; Lagos, 138 S. Ct. at 1688).  Accordingly, the
Court has found the fees incurred in connection with Covington's
attendance at pre-trial proceedings are not compensable because
Covington only attended these proceedings for its own "review,
understand[ing], and analy[sis]" as counsel for its non-party
and non-witness client, Valeant.  (Dec. 10 Victim Ltr. at 5.)

Milbank's attendance is different.  Kornwasser was called
as a witness at trial by the Government on May 14, 2018 and
testified for the Government on two days – May 14, 2018 and May
15, 2018.  (See May 14, 2018 Tr. at 899:25-900:2, 902:6-8,
902:11-943:22, 944:15-1001:14, 1006:8-1012:24, 1022:5-1059:6,

1061:3-1065:25, 1071:2-1085:12, 1085:15-1092:9, 1104:7-1114:19;
May 15, 2018 Tr. at 1166:6-1169:25, 1172:1-1217:3.)   Milbank
therefore attended pre-trial proceedings as part of its
preparing the testimony of its Government-witness client.   As
such, unlike Covington, Milbank undoubtedly engaged with the
Government at these proceedings at the Government's request
because its client was testifying at the Government's request.
See Napout, 2018 WL 6106702, at *4.

Finally, as to Milbank's attendance at trial proceedings
where Kornwasser did not testify, the Court finds this
comparable to Covington's attending and monitoring Defendants'
trial, the fees for which the Court has found compensable under
the MVRA.   See Section III(B)(iv)(4), supra.   Because Kornwasser
only testified on May 14, 2018 and May 15, 2018, Defendants
contend that Milbank attorneys' attendance at trial proceedings
on May 2, 2018, May 3, 2018, May 9, 2018, and May 10, 2018 was
unnecessary and therefore not compensable.   (Dec. 21 Def. Ltr.
at 3-4.)

However, the trial transcript reveals that, on every one of
these trial days, which immediately preceded the two days during
which Kornwasser testified, Kornwasser was discussed at length
by defense counsel, the Government, and various witnesses alike.
(May 2, 2018 Trial Transcript, dated June 13, 2018 [dkt. no

38

143], 33:22, 54:1; May 3, 2018 Trial Transcript, dated June 13, 2018 [dkt. no. 145], 41:18-45:13, 183:10-184:10, 186:11-23, 204:20-205:1, 206:4-16; May 9, 2018 Tr. at 22:15-16, 203:13-19, 215:3-16; May 10, 2018 Tr. at 2:4-6:18.)

Given the sheer number of times he was mentioned at trial, Kornwasser was clearly a "very significant" Government witness.[9] (Dec. 10 Victim Ltr. at 7.)  Therefore, Milbank's attendance at trial on these days was "necessary" to prepare Kornwasser for his upcoming testimony and thus was "necessary" to the Government's investigation and prosecution of Defendants. Lagos, 138 S. Ct. at 1689.  Accordingly, the Court finds Valeant is entitled to $60,000.00 for the fees incurred in preparing for and attending pre-trial proceedings and attending trial proceedings where Kornwasser did not testify.

### 2. Milbank-Related Restitution Request 2: $34,000.00 for the Fees Incurred in Preparing for Kornwasser's Testimony

The Court finds that Milbank's preparing Kornwasser for his testimony is analogous to Covington's preparing Webber, Nascimento, and Volker for their testimony, the fees for which

---

[9] Defendants also argue that "it was appropriate for one Milbank lawyer — not two — to be present" on the days Kornwasser testified.  (Dec. 21 Def. Ltr. at 4.)  The Court rejects this argument because, as Defendants themselves concede, on those two days, the two attorneys "me[t] with the government and 'attend[ed] and provid[ed] support' for Mr. Kornwasser."  (Id.)

the Court has found compensable under the MVRA.  See Section III(B)(iv)(4), supra.  Like Webber, Nascimento, and Volker, there is no dispute that Kornwasser was called as a witness at trial by the Government on May 14, 2018 and testified for the Government on two days – May 14, 2018 and May 15, 2018.  (See May 14, 2018 Tr. at 899:25-900:2, 902:6-8, 902:11-943:22, 944:15-1001:14, 1006:8-1012:24, 1022:5-1059:6, 1061:3-1065:25, 1071:2-1085:12, 1085:15-1092:9, 1104:7-1114:19; May 15, 2018 Tr. at 1166:6-1169:25, 1172:1-1217:3.)  See also Napout, 2018 WL 6106702, at *4 & n.4 (finding the victim's request for fees "in connection with [the victim's employee's] testimony" compensable under the MVRA where "[t]here is no dispute that [the victim's employee] was called as a witness at the government's request").

Defendants misinterpret Lagos's holding when they argue that, because "Kornwasser was the government's witness ... it was the government – not Milbank – that should have been responsible for the lion's share of time spent anticipating the defenses' cross-examination strategy and preparing Mr. Kornwasser for cross and re-direct examination."  (Dec. 21 Def. Ltr. at 4.)  The Lagos test is not whether a specific investigatory or prosecutorial activity the victim took on should have instead been conducted by the Government; rather, the test is whether that activity was undertaken by the victim at the Government's "express[] and specific[] 'invitat[ion] or

request[].'" Napout, 2018 WL 6106702, at *4.  Accordingly, as
Milbank was preparing Kornwasser's testimony because he was
testifying at the Government's request, the Court finds Valeant
is entitled to the $34,000.000 in fees incurred in connected
with such preparation.

### 3. Milbank-Related Restitution Requests 3 and 4: $10,000.00 for the Fees Incurred Discussing the Case with Covington Attorneys or Preparing for Calls and Meetings with Covington; and $3,000.00 for the Fees Incurred Reviewing Press Reports Regarding the Case

The Court denies Valeant's third and fourth restitution
requests in their entirety.  The Court fails to see how
Milbank's communicating with Covington and perusing press
reports of the case, (Dec. 21 Def. Ltr. at 5), were
"investigatory activities that the government expressly and
specifically 'invited or requested.'" Napout, 2018 WL 6106702,
at *4.  The Lagos Court has explicitly called for a "limited
interpretation" of the MVRA; granting any of these requests
would run afoul of that instruction.  Lagos, 138 S. Ct. at 1690.

### 4. Milbank-Related Restitution Request 5: $16,000.00 for Other Fees Incurred

In keeping with the Court's holding as to Valeant's fifth
Covington-related restitution request, see Section
III(B)(iv)(5), supra, and again "[f]ollowing Judge Rakoff's lead
in Gupta," Ebrahim, 2013 WL 2216580, at *4, the Court reduces
the $16,000.00 in other fees incurred by 10 percent.  The Court

41

finds that the activities in this category, including "'getting-up-to speed' tasks such as 'review[ing] and analyz[ing] the complaint,'" are excessive under the MVRA, even though they were part of assignments conducted by the Milbank "team representing Mr. Kornwasser." (Dec. 21 Def. Ltr. at 5.)  Valeant is therefore entitled to $14,400.00 in connection with this fifth and final restitution request.

Adding together the $60,000.00, $34,000.00, and $14,400.00 in contested Milbank fees the Court finds Valeant is entitled to, Defendants are liable to Valeant for $108,400.00 in restitution for the contested fees related to Milbank's representation of Kornwasser.

Accordingly, in adding the $828,759.68 Defendants do not dispute Valeant is entitled to outright for the legal fees of the five other law firms, the $193,587.44 Defendants do not dispute Valeant is entitled to outright in connection with Milbank fees, and $108,400.00 of the contested Milbank fees the Court finds Valeant is entitled to, Defendants are liable for $1,130,747.12 in total in restitution for the work of the six law firms that represented Valeant employees.

## C. Defendants are Jointly and Severally Liable

Under the MVRA, "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may

make each defendant liable for payment for the full amount of restitution." 18 U.S.C. § 3664(h). In accordance with this section of the statute, the Court of Appeals has repeatedly found defendants jointly and severally liable. `See, e.g., United States v. Dalicandro, 711 F. App'x 38, 43 (2d Cir. 2017) (affirming joint and several liability for defendants because they were both "integral to the fraud" (citation omitted)). Here, the jury convicted both Defendants of all counts charged in the Superseding Indictment, and the evidence at trial showed that both Defendants "contributed to the loss of" Valeant and were "integral" to the conspiracy. Id. at 40, 43 (citations omitted).

Therefore, the Defendants are jointly and severally "liable for payment of the full amount of restitution." Id. at 40 (citation omitted).

### D. Valeant is Entitled to Prejudgment Interest

Prejudgment interest is properly awarded under the MVRA to fully compensate a victim for the loss suffered. See United States v. Qurashi, 634 F.3d 699, 704 (2d Cir. 2011) (citing consistent decisions rendered by six other circuits). A victim is presumptively entitled to prejudgment interest "unless evidence indicates the victim would not have put the funds to productive use." Id. (citing United States v. Gordon, 393 F.3d

43

1044, 1059 (9th Cir. 2004), abrogated on other grounds by Lagos v. United States, 138 S. Ct. 1684 (2018)).

Here, prejudgment interest is appropriate because Valeant could have used all of the money it lost for some other "productive use." The Court of Appeals has "expressly refused to place on the victims 'the burden of showing how they would have used the lost funds.'" United States v. Ageloff, 809 F. Supp. 2d 89, 97 (E.D.N.Y. 2011) (quoting Qurashi, 634 F.3d at 703-04), aff'd sub nom. United States v. Catoggio, 698 F.3d 64 (2d Cir. 2012).

Prejudgment interest accrues from the date Valeant incurred the relevant loss or expense. See, e.g., Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO, 955 F.2d 831, 839 (2d Cir. 1992) (upholding an order of prejudgment interest accruing from the date of injury); Qurashi, 2009 WL 10677000, at *38 (calculating prejudgment interest from the date of the loss). Additionally, the one-year treasury rate is often used by federal courts to determine the prejudgment interest rate. See Qurashi, 2009 WL 10677000, at *39. Accordingly, the Court grants Valeant's request that prejudgment interest be awarded starting from November 16, 2016, the date of the Sealed Complaint, dated Nov. 16, 2016 [dkt. no. 1], at a

rate of 0.76 percent, which was the one-year treasury rate on November 16, 2016.  (Oct. 23 VIS at 23.)

## IV.   CONCLUSION

For the reasons stated herein, the Government's request for restitution on behalf of Valeant is granted in part and denied in part [dkt. no. 201].  Defendants are ordered, jointly and severally, to pay Valeant a total of $11,855,683.35 in restitution.

Defendants shall make payments at a rate of no less than 20 percent of their gross monthly income.  Payments shall begin 30 days after the release from custody.  Payments shall be made to the Clerk of the Court, Southern District of New York, 500 Pearl Street, New York, NY 10007.  From time to time, the Clerk of the Court shall make payments to Valeant.  (Tanner Judgment at 9; Davenport Judgment at 9.)

SO ORDERED.

Dated:     New York, New York
           January 30, 2019

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge